# MORRIS *v.* GILMER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF ALABAMA.

No. 1150. Submitted January 2, 1889. — Decided January 28, 1889.

When the record discloses a controversy of which a Circuit Court cannot properly take cognizance, its duty is to proceed no further, and to dismiss the suit; and its failure or refusal to do so is an error which this court will correct of its own motion, when the case is brought before it for review.

It appearing from the evidence in this record that the sole object of the plaintiff in removing to the State of Tennessee was to place himself in a situation to invoke the jurisdiction of the Circuit Court of the United States, and that he had no purpose to acquire a domicil or settled home there, and no question of a Federal nature being presented to give juris-

diction independently of the citizenship of the parties, the court below should have dismissed the case.

*Hartog* v. *Memory*, 116 U. S. 588, explained and qualified.

THE court stated the case as follows:

The first assignment of error relates to the action of the Circuit Court in overruling a motion to dismiss this suit, as one not really and substantially involving a dispute or contro-versy properly within its jurisdiction.

On the 7th of July, 1884, the present appellee, James N. Gilmer, who was then, and during all his previous life had been, a citizen of Alabama, instituted a suit in equity, in one of the Chancery Courts of that State, against Josiah Morris, individually, and against Josiah Morris and F. M. Billing as composing the firm of Josiah Morris & Co., citizens of Ala-bama. Its object was to obtain a decree declaring that the transfer, by the plaintiff to Morris, of sixty shares of the capi-tal stock of the Elyton Land Company, an Alabama corpora-tion, was made in trust and as collateral security for the pay-ment of a debt due from the plaintiff to Josiah Morris & Co.; ordering an accounting in respect to the amount of that debt, the value of the stock, and the dividends thereon received by Morris; and directing him upon the payment of the debt and interest, or so much thereof as appeared to be unpaid, to trans-fer sixty shares of the stock to the plaintiff, and pay over any dividends received in excess of the debt due from the latter.

Besides putting in issue all the material averments of the bill, the answer relied upon laches and the Statute of Limita-tions in bar of the suit. The cause went to a hearing, upon pleadings and proofs, and, on the 29th of April, 1885, a final decree was rendered dismissing the suit; the Chancery Court holding that the claim was barred by the Statute of Limita-tions. Upon appeal, the decree was affirmed by the Supreme Court of Alabama, on the 27th of January, 1886. That court, as appears from the opinion of its Chief Justice, refused to modify the decree, so as to make it a dismissal without preju-dice to another suit. *Gilmer* v. *Morris*, 80 Alabama, 78.

The present suit was instituted, September 20, 1886, in the

Circuit Court of the United States by Gilmer, claiming to be a citizen of Tennessee, against Morris and Billing. It relates to the same shares of stock, and the relief asked is that Morris be decreed to account for and pay over to the plaintiff all dividends paid after it came to the defendant's hands, (after deducting Gilmer's indebtedness to Morris or to Morris & Co.,) and to transfer the sixty shares of stock to the plaintiff. The defendants filed a plea setting up the final decree in the state court in bar of the present suit. That plea having been overruled, *Gilmer* v. *Morris*, 30 Fed. Rep. 476, they separately answered; Billing disclaiming any interest in the stock, or in the dividends thereon. The plaintiff filed a replication.. Subsequently, December 16, 1887, the defendant Morris filed in the cause the affidavit of A. S. Gerald to the effect that, in a conversation held by him with the plaintiff on or about November 14, 1887, the latter informed him " that he had returned to the city of Montgomery to reside permanently, and had been living here with that intent some time previous to said conversation;" and also his own affidavit to the effect that he had been informed and believed that the plaintiff returned to the city of Montgomery " some time in the latter part of May or early part of June, 1887, with the purpose and intent of permanently residing in the State of Alabama, and has continuously resided in said State of Alabama ever since said time." On the 17th of November, 1887, before the final hearing of the cause, the defendants, with leave of court, filed a written motion for the dismissal of the suit upon the ground that it did not really and substantially involve a controversy within the jurisdiction of the Circuit Court; basing his motion upon the above affidavits of Gerald and Morris, and upon the depositions of the plaintiff, and of his father, F. M. Gilmer, taken in this cause in behalf of the plaintiff. The father, in his deposition taken *de bene esse*, October 27, 1886, makes the following statements on cross-examination:

" Q. Where does your son, J. N. Gilmer, now reside? A He resides in Memphis, Tennessee.

" Q. When did he remove there? A. I think he removed in April or May.

" Q. Of this year? A. Yes, sir, of this year.

" Q. Did he take his family with him? A. He did.

" Q. Did he take his furniture with him? A. He did.

" Q. Is not his home at present furnished with the same furniture and pictures that were in it when he was there? A. No, sir.

" Q. Does any one occupy his house? A. Yes, sir.

" Q. Who? A. Mr. Mitchell.

" Q. How long has he occupied it? A. I think he occupied it on the first of the month; it was rented to him the month before.

" Q. You think he occupied it from the first of October? A. Yes, sir.

" Q. I ask you if up to the first of October his furniture and effects were not in the house? A. No, sir, his effects went with him.

" Q. Did he remove all his furniture? A. Yes, sir.

" Q. Were not pictures left hanging on the wall of the house? A. No, sir.

" Q. Did he not move to the State of Tennessee for the purpose of bringing this suit in the United States court, and did he not so view it before he left? A. That is a question that he only can answer. I cannot answer for him.

" Q. I ask you if he did not tell you that his purpose in moving to Tennessee was for the purpose of bringing this suit in the United States court? A. He did not tell me that.

" Q. I ask you if you do not know that it was his purpose, and if it was not done under advice? A. I can tell you what I believe, but I cannot tell you what I know about it. I do not know it.

" Q. You say that you do not know whether that was his purpose or whether he was ever so advised? A. Well, I can say I advised him to do that.

" Q. Well, before his removal? A. Yes, sir.

" Q. How long before he removed was it that you advised him? A. Well, it was some months.

" Q. When did you advise him? Was it after the decision of the Supreme Court of Alabama in the chancery suit that you have spoken of? A. Yes, sir, it was after that.

"Q. I ask you if you didn't advise him to move for the purpose of bringing this suit in the United States court? A. I did.

"Q. And he changed his residence after that advice? A. I can say, further, that it was not the only thing that induced me to advise him. I wanted him relieved from his military occupation. I did not think that he would ever succeed in business as long as he was hanging on to a military organization, and I thought that his wife's mother lived in Memphis, and the family there were very desirous that they should go there. That was really the primary cause of my advising him, and I then suggested to him, 'If you go there you will have an opportunity of instituting suit' (in U. S. court). The prime object was to get him rid of all military organizations.

"Q. But part of the purpose was to get him so that he could institute suit in the United States court? A. Well, it was incidental. The primary purpose with me was to get him square out of the military organization.

"Q. Don't you know that he said his purpose in moving to Tennessee was to bring this suit in the United States court? A. I do not know that he said that. I may have heard him, but I cannot now bring it to mind.

"Q. Don't you know that it was his purpose to return here at the termination of this suit; don't you know this? A. I do not.

"Q. Do you know that he has moved to Tennessee, permanently, or with a view of remaining there? A. I do not.

"Q. Has he gone into any business in Tennessee? A. He has.

"Q. What is his business? A. Cotton-ginning business.

"Q. On his own account? A. No, sir; in connection with others.

"Q. Is he proprietor or employé? A. I really do not know.

"Q. Do you know whether he has made any investment in Tennessee? A. I do not.

"Q. Have his business connections here been severed? A. Yes, sir.

"Q. Entirely? A. Yes, sir; entirely.

"Q. How long before this present suit begun did he move

to Tennessee? A. I do not know when this suit was insti-
tuted, exactly; but I suppose about four or five months.

"Q. What month did he move away in; do you know? A.
I do not bear in mind the exact date; I think it was in April.

"Q. Of this year? A. Yes, sir.

"Q. When did you say that your intimacy with Mr. Morris
ceased? A. At the institution of this suit of J. N. Gilmer in
the Chancery Court. . . .

"Q. That suit was commenced in the Chancery Court of
Alabama by Gilmer, the same plaintiff, with Morris, the same
defendant, and prosecuted through the Chancery Court, and
then went to the Supreme Court on appeal, did it not? A. It
did. . . .

"Q. And you were examined as a witness? A. I was.

"Q. Is not this a continuation of that same controversy —
that suit? A. It is a continuation of the merits of the same
transaction, but it is a new controversy.

"Q. How old are you, Mr. Gilmer? A. I am 76 years old."

Redirect examination:

"Q. Do you know whether J. N. Gilmer sold his residence
before he left? A. He did.

"Q. Did he sell any other property — did he sell his cows
and horses? A. He sold everything, sir, that he didn't carry
with him.

"Q. Before he went to Memphis? A. Yes, sir."

The plaintiff, in his deposition, taken April 26, 1887, made
these statements on cross-examination:

"Q. Where do you reside now? A. In Memphis.

"Q. What State? A. The State of Tennessee.

"Q. How long have you resided there? A. One year.

"Q. Did you not go there, Mr. Gilmer, for the purpose of
getting jurisdiction to the Federal court of this State? A. I
did, sir.

"Q. Is it your purpose to return to Montgomery if you gain
this suit? A. That depends altogether upon circumstances.

"Q. What circumstances? A. If inducements be offered to
make it to my interest, I may.

"Q. Well, is there not expectation that such inducements will be offered? A. I have had inducements offered, but I have not accepted..

"Q. I repeat the question: Is it not your expectation that, in the event you gain this suit, such inducements will be offered you to return here that you will accept them? A. Yes, sir.

"Q. So that you think, if you gain this suit, you will come back to Montgomery to live? A. Yes, sir.

"Q. Were you born and raised here in Montgomery? A. I was.

"Q. And lived here until May, 1885, or June, was it? A. I left here on the first day of May, 1886.

"Q. That was after the suit in the State Chancery Court had been decided against you in the Supreme Court of Alabama? A. Yes, sir."

Upon consideration of said affidavits and depositions, and after argument by counsel for the respective parties, the motion to dismiss was denied. The cause subsequently went to a final decree giving the plaintiff the relief asked. *Gilmer* v. *Morris,* 35 Fed. Rep. 682.

*Mr. Henry C. Tompkins, Mr. Alexander T. London, Mr. Samuel F. Rice* and *Mr. Daniel S. Troy* for appellant.

*Mr. Henry C. Semple* and *Mr. W. A. Gunter* for appellee.

It is insisted, by the appellant, that the lower court should have dismissed this case for the want of jurisdiction, and there is an assignment of error, to that effect, in the argument of counsel.

So far as this matter is concerned, there is nothing in the record on which to predicate any assignment of error. The averment of citizenship to give jurisdiction in the bill is full.

Before the passage of the act of March 3, 1875, 18 Stat. 470, it was well settled "that the citizenship of the parties could not be put in issue on the merits, but that it must be brought forward at an earlier stage in the proceedings by plea in abatement, in the nature of a plea to the jurisdiction." *Farmington* v.

*Pillsbury,* 114 U. S. 138, 143. "Such was the condition of the law when the act of 1875 was passed;" but by that law "the old rule established by the decisions, which required all objections to the citizenship of the parties, unless shown on the face of the record, to be taken by plea in abatement, before pleading to the merits, was changed, and the courts were given full authority to protect themselves against the false pretences of apparent parties." *Ib.*

The terms of that act are: "If in any such suit . . . it shall appear to the satisfaction of the Circuit Court, *at any time after such suit has been brought* . . . that such suit does not really and substantially involve a suit or controversy properly within the jurisdiction of said Circuit Court . . . the said Circuit Court shall proceed no further therein, but shall dismiss the suit, . . . but the order dismissing . . . said cause shall be reviewable by the Supreme Court on writ of error or appeal, as the case may be."

In *Williams* v. *Nottawa,* 104 U. S. 209, 212, in speaking of cases under this law it is said: "Whether, if a defendant allows a case to go on until judgment has been rendered against him, he can take advantage of the objection on appeal, or writ of error, we need not decide. That would be a different case from this."

In *Hartog* v. *Memory,* 116 U. S. 588, construing this statute, and reviewing all the prior decisions, the following propositions may be said to be definitely settled.

1. That the general rule, well settled before the act of 1875, that when the citizenship necessary to give jurisdiction appeared on the face of the record, evidence to contradict the record was not admissible, except under a plea in abatement, and that a plea to the merits was an admission of the citizenship and waiver of a plea to the jurisdiction — was not altered by the act of 1875.

2. That the act of 1875 was enacted to enable the court, of its own motion, at any stage of the cause, to investigate the question of jurisdiction; and upon doing so, to protect itself from fraud, by a proper judgment.

3. That neither party under that act, has the right, *with-*

*out pleading at the proper time, and in the proper way,* to introduce evidence, the only purpose of which is to make out a case for dismissal; and that they cannot call on the court to go behind the averments of citizenship in the record, except by plea to the jurisdiction.

4. That the case is not to be tried by the parties as if there was a plea to the jurisdiction, when no such plea has been filed; and that the evidence must be directed to the issues, and that it is only when facts *material to the issues* show there is no jurisdiction, that the court can dismiss the case.

This authority disposes of the question at issue. The appellant did not plead to the jurisdiction; he pleaded in bar, and, after judgment against him on that, he filed his answer setting up other issues to the merits, on which the testimony was taken.

When the case came on for trial on these issues, to which, of course, the evidence could only be directed, the appellant, putting, as we affirm, an unwarranted construction on some immaterial, illegal and irrelevant evidence, asked the court to adopt his views, and, without more, to dismiss the cause in which he had already been defeated on the only debatable matter on the merits.

We do not deny that it was in the power of the court, if it suspected that its jurisdiction had been imposed upon, to have caused the proper inquiry to be made, or issue to be framed for that purpose. But this was a matter entirely for the court.

We insist that the law still is, as heretofore declared, that a citizen of the United States can instantly transfer his citizenship from one State to another by commensurate acts and purposes. And the right to sue in the courts of the United States attaches and adheres as an incident to the citizenship. *Rice* v. *Houston*, 13 Wall. 66, 68. And it makes not the slightest difference that the purpose of the change of domicil was to seek the independent judgment of a Federal court. *Briggs* v. *French*, 2 Sumner, 251; *Manhattan Ins. Co.* v. *Broughton*, 109 U. S. 121, 125, 126; *Jones* v. *League*, 18 How. 76; *Cooper* v. *Galbraith*, 3 Wash. C. C. 546; *Castor* v. *Mitchell,*

4 Wash. C. C. 191; *Case* v. *Clark*, 5 Mason, 70; *Gardner* v. *Sharp*, 4 Wash. C. C. 609; *Read* v. *Bertrand*, 4 Wash. C. C. 514; *Shelton* v. *Tiffin*, 6 How. 163.

The motive of a party in changing his domicil is not inquirable into. If the removal is real and is only for a day, the citizenship is acquired necessary for bringing suit. The motive can only be looked at as an element of evidence, to determine the reality of the removal. "Where a person lives is taken *prima facie* to be his domicil, until the facts establish the contrary." *Ennis* v. *Smith*, 14 How. 400, 423. A party who resides in a State with his family, and carries on business there is deemed a citizen of that State. *Knox* v. *Greenleaf*, 4 Dall. 360; *Byrne* v. *Holt*, 2 Wash. C. C. 282; *Shelton* v. *Tiffin*, 6 How. 163. "For the purposes of jurisdiction of the courts of the United States, domicil is the test of citizenship. A person cannot be a citizen of the State when he has abandoned his domicil there." *Poppenhausen* v. *India Rubber Co.*, 14 Fed. Rep. 707; *Case* v. *Clark*, 5 Mason, 70; *Cooper* v. *Galbraith*, 3 Wash. C. C. 546; *Lanz* v. *Randall*, 4 Dillon, 425; *Sheppard* v. *Graves*, 14 How. 505; *Kemna* v. *Brockhaus*, 5 Fed. Rep. 762.

All persons born or naturalized in the United States are, by the 14th amendment of the Constitution, "citizens of the United States and of the State where they *reside*." The appellee being in business in Alabama, with a family, and furniture, and property, including a residence, sells everything, and severing entirely his business connections, establishes his home and residence in Tennessee, and goes into business there. This is sufficient to satisfy any court that Tennessee had become his domicil.

Mr. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

It is unnecessary to decide whether the Circuit Court erre in overruling the plea of former adjudication, or in rendering the decree appealed from; for we are of opinion that the motion to dismiss the suit, as one not really involving a con-

troversy within its jurisdiction, should have been sustained. It is provided by the fifth section of the act of March 3, 1875, (18 Stat. 472,) determining the jurisdiction of the Circuit Courts of the United States, that if in any suit commenced in one of such courts " it shall appear to the satisfaction of said Circuit Court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said Circuit Court shall proceed no further therein, but shall dismiss the suit or remand it to the court from which it was removed, as justice may require; and shall make such order as to costs as shall be just."

The case presents no question of a Federal nature, and the jurisdiction of the Circuit Court was invoked solely upon the ground that the plaintiff was a citizen of Tennessee, and the defendants citizens of Alabama. But if the plaintiff, who was a citizen of Alabama when the suit in the state court was determined, had not become, in fact, a citizen of Tennessee when the present suit was instituted, then, clearly, the controversy between him and the defendants was not one of which the Circuit Court could properly take cognizance; in which case, it became the duty of that court to dismiss it. It is true that, by the words of the statute, this duty arose only when it appeared to the satisfaction of the court that the suit was not one within its jurisdiction. But if the record discloses a controversy of which the court cannot properly take cognizance, its duty is to proceed no further and to dismiss the suit; and its failure or refusal to do what, under the law applicable to the facts proved, it ought to do, is an error which this court, upon its own motion, will correct, when the case is brought here for review. The rule is inflexible and without exception, as was said, upon full consideration, in *Mansfield, Coldwater &c. Railway* v. *Swan*, 111 U. S. 379, 382, " which requires this court, of its own motion, to deny its own jurisdiction, and, in the exercise of its appellate power, that of all other courts of

the United States, in all cases where such jurisdiction does not affirmatively appear in the record on which, in the exercise of that power, it is called to act. On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relations of the parties to it." To the same effect are *King Bridge Co.* v. *Otoe County*, 120 U. S. 225; *Grace* v. *American Central Insurance Co.*, 109 U. S. 278, 283; *Blacklock* v. *Small*, 127 U. S. 96, 105, and other cases. These were cases in which the record did not affirmatively show the citizenship of the parties, the Circuit Court being without jurisdiction in either of them unless the parties were citizens of different States. But the above rule is equally applicable in a case in which the averment as to citizenship is sufficient, and such averment is shown, in some appropriate mode, to be untrue. While under the judiciary act of 1789, an issue as to the fact of citizenship could only be made by a plea in abatement, when the pleadings properly averred the citizenship of the parties, the act of 1875 imposes upon the Circuit Court the duty of dismissing a suit, if it appears at any time after it is brought and before it is finally disposed of, that it does not really and substantially involve a controversy of which it may properly take cognizance. *Williams* v. *Nottawa*, 104 U. S. 209, 211; *Farmington* v. *Pillsbury*, 114 U. S. 138, 143; *Little* v. *Giles*, 118 U. S. 596, 602. And the statute does not prescribe any particular mode in which such fact may be brought to the attention of the court. It may be done by affidavits, or the depositions taken in the cause may be used for that purpose. However done, it should be upon due notice to the parties to be affected by the dismissal.

It is contended that the defendant precluded himself from raising the question of jurisdiction, by inviting the action of the court upon his plea of former adjudication, and by waiting until the court had ruled that plea to be insufficient in law. In support of this position *Hartog* v. *Memory*, 116 U. S. 588, is cited. We have already seen that this court must, upon its

own motion, guard against any invasion of the jurisdiction of the Circuit Court of the United States as defined by law, where the want of jurisdiction appears from the record brought here on appeal or writ of error. At the present term it was held that whether the Circuit Court has or has not jurisdiction is a question which this court must examine and determine, even if the parties forbear to make it or consent that the case be considered upon its merits. *Metcalf* v. *Watertown*, 128 U. S. 586

Nor does the case of *Hartog* v. *Memory* sustain the position taken by the defendant; for it was there said that "if, from any source, the court is led to suspect that its jurisdiction has been imposed upon by the collusion of the parties or in any other way, it may at once, of its own motion, cause the necessary inquiry to be made, either by having the proper issue joined and tried, or by some other appropriate form of proceeding, and act as justice may require for its own protection against fraud or imposition." In that case, the citizenship of the parties was properly set out in the pleadings, and the case was submitted to the jury without any question being raised as to want of jurisdiction, and without the attention of the court being drawn to certain statements incidentally made in the deposition of the defendant against whom the verdict was rendered. After verdict, the latter moved for a new trial, raising upon that motion, for the first time, the question of jurisdiction. The court summarily dismissed the action, upon the ground, solely, of want of jurisdiction, without affording the plaintiff any opportunity whatever to rebut or control the evidence upon the question of jurisdiction. The failure, under the peculiar circumstances disclosed in that case, to give such opportunity, was, itself, sufficient to justify a reversal of the order dismissing the action, and what was said that was irrelevant to the determination of that question was unnecessary to the decision, and cannot be regarded as authoritative. The court certainly did not intend in that case to modify or relax the rule announced in previous well-considered cases. In the case before us the question was formally raised, during the progress of the cause, by written motion, of which the plaintiff

had due notice, and to which he appeared and objected. So that there can be no question as to any want of opportunity for him to be heard, and to produce evidence in opposition to the motion to dismiss.

We are thus brought to the question whether the plaintiff was entitled to sue in the Circuit Court. Was he, at the commencement of this suit, a citizen of Tennessee? It is true, as contended by the defendant, that a citizen of the United States can instantly transfer his citizenship from one State to another, *Cooper* v. *Galbraith*, 3 Wash. C. C. 546, 554, and that his right to sue in the courts of the United States is none the less because his change of domicil was induced by the purpose, whether avowed or not, of invoking, for the protection of his rights, the jurisdiction of a Federal court. As said by Mr. Justice Story, in *Briggs* v. *French*, 2 Sumner, 251, 256, "if the new citizenship is really and truly acquired, his right to sue is a legitimate, constitutional and legal consequence, not to be impeached by the motive of his removal." *Manhattan Ins. Co.* v. *Broughton*, 109 U. S. 121, 125; *Jones* v. *League*, 18 How. 76, 81. There must be an actual, not pretended, change of domicil; in other words, the removal must be "a real one, *animo manendi*, and not merely ostensible." *Case* v. *Clarke*, 5 Mason, 70. The intention and the act must concur in order to effect such a change of domicil as constitutes a change of citizenship. In *Ennis* v. *Smith*, 14 How. 400, 423, it was said that "a removal which does not contemplate an absence from the former domicil for an indefinite and uncertain time is not a change of it," and that while it was difficult to lay down any rule under which every instance of residence could be brought which may make a domicil of choice, "there must be, to constitute it, actual residence in the place, with the intention that it is to be a principal and permanent residence."

Upon the evidence in this record, we cannot resist the conviction that the plaintiff had no purpose to acquire a domicil or settled home in Tennessee, and that his sole object in removing to that State was to place himself in a situation to invoke the jurisdiction of the Circuit Court of the United States. He went to Tennessee without any present intention

to remain there permanently or for an indefinite time, but with a present intention to return to Alabama as soon as he could do so without defeating the jurisdiction of the Federal court to determine his new suit. He was, therefore, a mere sojourner in the former State when this suit was brought. He returned to Alabama almost immediately after giving his deposition. The case comes within the principle announced in *Butler* v. *Farnsworth*, 4 Wash. C. C. 101, 103, where Mr. Justice Washington said: "If the removal be for the purpose of committing a fraud upon the law, and to enable the party to avail himself of the jurisdiction of the Federal courts, and that fact be made out by his acts, the court must pronounce that his removal was not with a *bona fide* intention of changing his domicil, however frequent and public his declarations to the contrary may have been."

*The decree is reversed, with costs to the appellant in this court, and the cause remanded, with a direction to dismiss the suit without costs in the court below.*