### JEFFREY–NICHOLS MOTOR CO. v. HUPP MOTOR CAR CORPORATION.
No. 3591.

District Court, D. Massachusetts.
June 6, 1930.

Butzel, Levin & Winston, of Detroit, Mich., and Sherman L. Whipple, Lothrop Withington, and Edward C. Park, all of Boston, Mass., for plaintiff.

Albert A. Schaefer and Ropes, Gray, Boyden & Perkins, all of Boston, Mass., for defendant.

BREWSTER, District Judge.

In this suit, brought under the anti-trust laws (USCA, title 15, § 18), a motion has been filed by the defendant which assails the jurisdiction of this court.

The defendant is described in the writ as a Virginia corporation with a principal place of business in Detroit, in the state of Michigan, and transacting business in this district.

In a pleading, entitled a "Motion," the defendant denies that it ever transacted business in Massachusetts and asks to have the writ abated and the action dismissed.

Section 22 of said title 15 provides that, "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business. * * *"

Concededly, the defendant is not an inhabitant of this district. The issue raised by defendant's motion, therefore, is whether the venue of this action is laid in a district wherein the defendant corporation may be found or transacts business.

Before proceeding to a consideration of this issue, however, it is necessary to dispose of objections, more or less technical, which the plaintiff has made respecting the manner in which the defendant has raised the question of jurisdiction.

I concur with the plaintiff when it argues that the cause of action falls within the general jurisdiction of the District Courts and that the provisions of section 22, above cited, relate to venue only. But the plaintiff cannot invoke that jurisdiction in this district unless the defendant is found, or transacts business, within the territorial limits of the district. The question relates, not to the general jurisdiction, but to the local jurisdiction, of the court.

According to the allegations of the writ, the defendant transacts business in this district. This averment was necessary in order to give this court jurisdiction over this particular suit, in the absence of waiver by the defendant. This allegation is denied by the defendant, who appeared specially for the purpose of attacking the jurisdiction of the court.

If it should be made to appear that the defendant was not, at the time of the bringing of this action, transacting business in Massachusetts, it is of little consequence how the issue of fact is raised, especially in view of the provisions of Judicial Code, § 37

(USCA, title 28, § 80). Morris v. Gilmer, 129 U. S. 315, 9 S. Ct. 289, 32 L. Ed. 690; Gilbert v. David, 235 U. S. 561, 35 S. Ct. 164, 59 L. Ed. 360; Bjornquist v. Boston & Albany R. Co. (C. C. A.) 250 F. 929, 5 A. L. R. 951.

There can be no objection to treating the pleading as a plea in abatement. Bjornquist v. Boston & Albany R. Co., supra.

■ According to the rules of this court, answers in abatement, grounded on facts not apparent upon the record are heard upon affidavits and counter affidavits. The rule leaves it discretionary with the court to determine whether evidence shall be taken on any issue of fact raised by the pleadings. District Court Rule No. 12.

Pursuant to this rule, the defendant, in support of its motion, filed affidavits, and the plaintiff filed counter affidavits. The issue of fact was heard upon these affidavits, the court declining to take other evidence. The court was led to this course because it was quite apparent that the question turned upon facts which, so far as material, were not seriously in dispute, and upon the legal effect to be given to a contract which was annexed to one of the affidavits.

I am satisfied that the course of procedure adopted by this court was in accordance with the established practice obtaining in the federal courts. Morris v. Gilmer, supra, at page 326 of 129 U. S., 9 S. Ct. 289, 32 L. Ed. 690; Hill v. Walker (C. C. A.) 167 F. 241; Anderson v. Bassman (C. C.) 140 F. 10.

■ So far as the provisions of the Judicial Code and the rules of this court are in conflict with the state practice, the former must control, notwithstanding the Conformity Act (28 USCA § 724). Hill v. Walker, supra; Munter v. Weil Corset Co., Inc., 261 U. S. 276, 43 S. Ct. 347, 67 L. Ed. 652.

■ For the purposes of the case I will accept the dictum of the Circuit Court of Appeals in this circuit, that the burden of proof rests upon the defendant. Bjornquist v. Boston & Albany R. Co., supra. See also Hill v. Walker, supra.

■ We now come to a consideration of the facts, as established by the affidavits and counter affidavits, in order to determine whether the defendant was transacting business in this district, within the meaning of section 22.

The defendant was incorporated under the laws of Virginia. It obtained a license to do business in the state of Michigan, and in no other state. It is engaged in the business of manufacturing and selling automobiles, all of which are manufactured at Detroit and sold f. o. b. Detroit. The defendant has never maintained any office or place of business in Massachusetts, and at the time this suit was brought it had no resident agent therein unless the contract hereinafter considered created an agency.

On August 1, 1928, the defendant entered into a contract with the Boston Hupmobile Company, Inc. (hereinafter called the Boston Company). The defendant owns or controls no stock in the Boston Company and has no financial interest therein. Nor has the Boston Company any stock ownership in the defendant. The contention of the plaintiff that the defendant is transacting business in this district rests upon three grounds: (1) The contract between the defendant and the Boston Company, which the plaintiff claims creates the relationship of principal and agent; (2) the activities of district managers of the defendant in this state; and (3) the method of conducting its advertising campaign in Massachusetts.

The contract is designated a "Distributor's Territory Agreement." By its terms the defendant, referred to in the contract as the "manufacturer," grants to the Boston Company, referred to in the contract as the "Distributor," the right to sell Hupmobiles in the territory described therein which included, together with other territory, all of Massachusetts except the county of Berkshire, which county is covered by a similar agreement, entered into between the defendant and a New York distributor.

The contract is too long to warrant a full recital of its elaborate terms in this opinion, but it will be necessary to summarize its provisions in order that we may get a clear idea of the purposes of the contract, the relationship created, and the rights and duties of the parties thereto.

It is the obvious purpose of the contract not to deal with specific transactions, but to create a relationship between the defendant and the so-called distributor, which would continue during the life of the contract. It is equally apparent that this relationship is created in order that the defendant may develop a market for its product in the territory assigned. Pursuant to the terms of the contract, business is carried on in Massachusetts which results in the sale of defendant's product to the ultimate owner. The difficulty lies in determining whether the defendant is to be regarded as participating in it in such a

manner as to justify the conclusion that it is engaged in the transaction of that business. The contract in effect practically confers upon the distributor the exclusive right to sell Hupmobiles in Massachusetts, except in the county of Berkshire. There are reservations in the contract giving the defendant a right to sell repair parts direct to owners, and to sell automobiles to persons who purchase them in large numbers through a central organization, but these rights have never been exercised. Whatever of defendant's products have been sold in Massachusetts have been sold by the distributor, presumably in accordance with the terms of the contract. The essential terms of the contract and the method of carrying on business under it, stated as briefly as practicable, are as follows: A certain number of cars are allotted to the distributor according to a schedule annexed. The manufacturer is not bound to deliver all of these cars, nor is the distributor under obligations to take and pay for them.

Section 8 of the agreement is in part as follows: "This Agreement shall not be construed or held to be a contract for the sale of any automobiles or other products of the Manufacturer. * * *" The manufacturer agrees to ship to the distributor on orders accepted by the manufacturer in accordance with the conditions of the contract f. o. b. cars Detroit, and the distributor agrees to pay the invoice price for cars shipped to him or his dealers, remitting in advance bank drafts or certified check or by paying manufacturer's sight draft with order bill of lading attached. I infer that the regular course of business was to meet drafts with bill of lading attached as they were presented in Boston. The responsibility of the manufacturer for damage to the goods ordered ceases upon delivery to the common carrier. It is expressly provided that the "purchase and sale of Hupmobiles and other products is understood to be made at Detroit, Michigan."

Under the conditions of the agreement modifying the defendant's obligation to ship cars, the defendant apparently has the discretion of determining whether and to what extent it will ship each month the distributor's requirements supported with definite noncancelable orders.

Paragraph 12 of the agreement contains this provision: "If for any reason, the manufacturer does not ship during the month any orders specified for that month, such unshipped or unfilled orders may be cancelled at the discretion of the Manufacturer and deducted from the Distributor's allotment."

The distributor is required to make a deposit not exceeding $1,500, which the manufacturer retains until all obligations have been satisfied and "until satisfactory settlement has been made by the Distributor with his Dealers."

The distributor is required to display suitable Hupmobile signs and to co-operate with the manufacturer in the conduct of local advertising; to maintain a salesroom and service station satisfactory to the manufacturer; to make no charge to owners for parts replaced or supplied gratis by the manufacturer; to appoint dealers in all important towns in the described territory, or as many as may be necessary in the opinion of the manufacturer properly to take care of sales therein; to obtain from each dealer a written agreement on forms furnished by the manufacturer, and to forward to the manufacturer a copy of such agreement; to furnish the manufacturer each month, on forms provided for that purpose, the names and addresses of all purchasers of Hupmobiles in the territory, including dealers and individuals; to furnish dealers a fair and equitable proportion of the automobiles received under the agreement; and to sell only such repair parts as are purchased from, or have the written approval of, the manufacturer.

The distributor agrees that he will not solicit orders for, or make sales of, automobiles to be delivered outside of his territory without the consent of the manufacturer.

The manufacturer reserves the right to change prices of cars upon notice to the distributor, and it is agreed that, if the manufacturer reduces the price of current models, the reduction shall apply to the stock of new and unused current models which the distributor, or his dealers, may have on hand at the time of the reduction, if shipped by the manufacturer during the preceding six months.

Either party may cancel the agreement at any time upon written notice. The agreement is not assignable by the distributor without the manufacturer's consent.

Upon cancellation of the agreement, the manufacturer agrees to repurchase parts to be returned to Detroit, or delivered to a new distributor, and if the contract is canceled by the manufacturer it agrees to repurchase cars; and if canceled by the distributor it has the option to repurchase them.

Although the word "commission" appears in the contract and Appendix A, the principal profits accruing to the distributor come from the allowance of discounts from the list price of the cars. The contract contains this

express provision: "It is further understood and agreed that the Distributor is not authorized or empowered to act as agent for, or representative of, the Manufacturer, nor to transact business, incur obligations or bill goods in its name, nor for its account, nor on its behalf to make any promise, warranty or representation with respect to goods or other matter, and that the Manufacturer will not be bound by any acts or conduct of the Distributor."

It also appears from the affidavits that the defendant, on at least three occasions, added to the distributor's territory, each time increasing his allotment.

From the foregoing résumé of the material terms of the agreement, the plaintiff deduces the conclusion that a legal relationship of principal and agent is created, with the logical result that the business of the distributor is business carried on by the defendant within this state.

Before considering the validity of this conclusion, it may be well to consider other activities of the defendant, as they are disclosed in the affidavits and counter affidavits.

It appears that, both before and after this suit was instituted, the defendant had in its employ a district manager whose duty it was to keep in touch with the distributor. This district manager spent four or five days each month in Massachusetts for the purpose of securing information regarding the business of the distributor. The district manager who was assigned to the Massachusetts territory on May 15, 1929, said that it was his duty to visit distributors from time to time, observe their business methods, note their suggestions, and report to his superiors; that he endeavored to suggest to distributors selling plans, as a result of his observation in other sections of the country; that he had no relation with dealers whatsoever and visited them only on particular occasions when the distributor requested him to do so for the purpose of eliminating some dispute between distributor and dealer, but that on such occasions he did not act in any official capacity.

The district manager did not solicit, or take, any orders for cars from customers, nor did he exhibit, explain, or demonstrate the defendant's product to prospective customers. He had no authority to makes sales on defendant's account.

Between April 1 and May 15, 1929, the defendant had no district manager in Massachusetts.

From the affidavits, it appears quite conclusively that the regular course of business of the defendant included the employment of a district manager, or "contact man," whose duties were substantially the same as those above enumerated and who visited Massachusetts up to April 1, 1929. The mere fact that, on the day this suit was brought, the position was vacant would not, in my opinion, have any material bearing upon the case.

The methods and policies of the defendant respecting advertising which obtained prior to August 1, 1929, were as follows:

Advertisements which appeared in the magazines and newspapers were prepared by an advertising agency in New York which prepared the illustrations, composed the wording, and ordered engravings made, all of which were submitted to the officials of the defendant for approval. If they were approved by the defendant's advertising department, the agency was instructed to proceed with the execution of the order, and thereupon the agency issued the necessary orders to the newspapers with instructions to submit the advertisement to the distributor in proof form before it appeared in the newspaper, and to secure the distributor's approval of the advertisement.

The publishers entered into contractual relations only with the advertising agency which was solely responsible for the payment. The defendant paid the advertising agency for the advertisements. It had no written contract with the advertising agency, their relations being governed by the usual customs and policies prevailing between the advertising agency and its clients. These transactions were carried on at the defendant's principal place of business in Detroit. Advertising matter put out by the defendant, in accordance with the above course of business, appeared in Boston papers no less than six times during the month of April, 1929.

It has not been shown that the district manager or any duly authorized agent of the defendant has ever consummated a contract in this state. The manager has, however, on behalf of his employer, periodically reported to his employer upon, and advised respecting, the activities of the Boston Company. His undoubted aim was to see that the Boston Company duly advanced the interests of the defendant by the sales of automobiles in Massachusetts.

I have no difficulty in reaching a conclusion that the contract and the business carried on pursuant to it, whether taken alone or in connection with the activities of defendant's district manager or its advertising department, do not constitute the carrying on of

business of such a character, or to such an extent, as would be necessary in order to bring the corporation within that class of corporations which can be said to be "found" in the district, as that word has been judicially defined. People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537; Bank of America v. Whitney Bank, 261 U. S. 171, 43 S. Ct. 311, 67 L. Ed. 594; Standard Oil Co. of New Jersey v. United States, 221 U. S. 1, 31 S. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Ann. Cas. 1912D, 734; Cannon Mfg. Co. v. Cudahy Packing Co., 267 U. S. 333, 45 S. Ct. 250, 69 L. Ed. 634; Eastman Kodak Co. v. Southern Photo Materials Co., 273 U. S. 359, 47 S. Ct. 400, 403, 71 L. Ed. 684; Haskell v. Aluminum Co. of America (D. C.) 14 F.(2d) 864.

The real problem which calls for solution in this case is whether, on the facts as shown above, the defendant "transacts business" in the state of Massachusetts within the meaning of section 22, so that the venue of the suit may be properly laid in this district.

In order to give this court local jurisdiction under section 22, it is not necessary, of course, that the corporation defendant be carrying on business within the district in such a manner or to such an extent as would enable the court to find that it had submitted to the local jurisdiction for the service of process. Eastman Kodak Co. v. Southern Photo Materials Co., supra.

There are two decisions of the Supreme Court which throw light upon what course of business is adequate to subject the defendant to the local jurisdiction in actions brought under the anti-trust laws. In Green v. Chicago, B. & Q. R. Co., 205 U. S. 530, 27 S. Ct. 595, 51 L. Ed. 916, the court strongly intimated that the corporation was doing business in Pennsylvania although not in such sense that process could be served upon it in that state. In that case the business carried on within the district was that of soliciting orders by a freight and passenger agent, employed by the defendant which maintained an office in Philadelphia. Several clerks and traveling agents were employed by the district agent who acted under his direction. While the question was not raised in that case, it is a fair inference that the court would have had no hesitation in finding that the railroad "transacted business" in Philadelphia within the meaning of section 22.

The other case is Eastman Kodak Co. v. Southern Photo Materials Co., supra, where Mr. Justice Sanford remarks in the opinion that: "A corporation is engaged in transacting business in a district, within the meaning of this section, in such sense as to establish the venue of a suit—although not present by agents carrying on business of such character and in such manner that it is 'found' therein and is amenable to local process—if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character."

The test which that decision furnishes is that the defendant corporation must be engaged in transacting business of a substantial character within the district. Turning to the facts of the case, it is quite apparent that stress was laid upon the fact that the defendant, "in a continuous course of business, was engaged, not only in selling and shipping its goods to dealers within the Georgia district, but also in soliciting orders therein through its salesmen and promoting the demand for its goods through its demonstrators for the purpose of increasing its sales. * * *" It appeared also in that case that the demonstrators took orders for goods which were turned over to the local dealers supplied by the defendant.

United States v. Asbestos Corp., Ltd. (D. C.) 34 F.(2d) 182, is a case in the lower court where the manner and extent of defendant's business did not warrant the inference that it was present within the state and yet found to be sufficient to warrant the inference that it was transacting business within the state. In that case the corporation did a large volume of business through salesmen, sent into New York from the defendant's office in Toronto, who systematically and regularly solicited orders from the trade.

It is to be noted, from an examination of these cases, that although the defendant maintained no office within the district and had no resident agents therein, it did through its agents solicit and obtain a substantial volume of business resulting in interstate shipment of its goods into the district. I have been able to discover no case where anything less than this has been held sufficient to warrant the conclusion that the defendant was transacting business in such sense as to establish venue of the suit.

I see no room for arguing that the defendant, in the case at bar, is engaged in any business in Massachusetts unless the distributor's contract and the activities of the district manager are sufficient to constitute the Boston Company an agent for the defendant; in other words, that the defendant was engaged

in business here through its agent, the Boston Company. The mere fact that the defendant exercised a measure of supervision over the affairs of the Boston Company would not be of controlling importance if transactions consummated were independent transactions of the latter, a distinct corporate entity. Cannon v. Cudahy, supra. In legal contemplation, the two corporations carried on their business as wholly independent corporations.

As to whether the contract itself created the relationship of agent, it may be observed that a contract in all essential particulars identical with that between the defendant and the Boston Company was before the court in S. B. McMaster v. Chevrolet Motor Co. (D. C.) 3 F.(2d) 469. The court in that case was compelled to give effect to the express terms of the agreement by which the parties undertook to establish their status or legal relationship, by denying that the agreement constituted the dealer as an agent or local representative of the seller for any purpose whatsoever. There were in that case the same references to compensation and commissions, the same supervision over dealers and sub-dealers, and the same reservations of right on the part of the manufacturer to sell direct in the territory which are found in the case at bar. These provisions were all considered, with the result that the court felt it to be its duty to ascertain and give effect to the real intention of the contracting parties.

The learned judge made this comment upon the contract:

"As I view this contract, the case is simply this: The manufacturer desires to sell his products in such manner only that his interests may be promoted. He therefore demands as a part of the price in the making of the contract that the person to whom he sells his goods shall submit to certain restrictions. The person desiring to buy the manufacturer's goods is anxious to purchase them, and in order to purchase them is willing to submit to the conditions and restrictions named. A consideration of the whole contract and all its terms shows that the parties were studiously careful to make a contract of sale and not a contract of agency. They certainly had a right to do this, and if that was their real intention it is the duty of this court to give effect to that intention.

"This court has no difficulty aside from the cases cited in reaching the conclusion upon principle that the Barrow-Chevrolet Company under this contract is not the agent of the defendant and that the defendant is not doing business in South Carolina."

S. B. McMaster v. Chevrolet Motor Co., supra, at page 475.

While it is true that the question there was whether the defendant was doing business within the state so as to be amenable to process, the court pointed out that "if the defendant is doing business at all in this state, it is by virtue of the agency created by the contract. * * *"

▉ I concur in the statement that the agreement should be so construed as to give full effect to the intention of the parties. There is no ground of public policy which militates against a contract which is obviously designed to increase a manufacturer's interstate business without transacting business in every state into which its product goes. It is unmistakably clear that this was the deliberate purpose of the parties in framing the contract as they did, and in adopting the course of business which was carried on.

I do not think it can be successfully claimed that the situation would justify one in holding that the contract conferred upon the distributor any authority to bind the manufacturer by any contract which the former might enter into in the course of the business. Nevertheless, the plaintiff suggests that, even though it has no such power and authority, there may be an agency existing merely to promote in manifold ways the trade and commerce of the manufacturer and the shipment by it, in interstate commerce, of cars into the state, and in that limited sense the Boston Company was agent of the defendant.

I do not think this proposition can be harmonized with the authorities, nor do I deem it a sound principle of law. The relationship must be of such a character as to render the acts of the distributor those of his principal. To say that the activities of the Boston Company resulted in an increase of defendant's interstate business is not sufficient, in my opinion, to warrant the conclusion that the manufacturer is doing business in Massachusetts.

In the case at bar, all the acts of the distributor were for its own account. Its purchases were made for itself. Resales were made by it to whomever it wished, and at such prices as it wished. In all respects it was the absolute owner, with all the rights incident to absolute ownership.

Proceeding on the theory that the contract does not create an agency, we have this sit-

uation: That the defendant did not maintain an office in this state; it had no resident agent therein; it sent no salesmen into the territory soliciting business; nor did it, in furtherance of its business, employ traveling demonstrators to exhibit and explain the superiority of defendant's product. No orders were solicited from customers which were turned over to the Massachusetts distributor.

Thus we see that, in several important particulars, the facts of this case fall short of the situation with which the court was dealing in the Eastman Kodak Co. v. Southern Photo Materials Co., supra, case, and United States v. Asbestos Corp., Ltd., supra.

It is my opinion that the facts do not warrant me in ruling that the defendant was transacting business here of "any substantial character." It follows, therefore, that the defendant is not transacting business in Massachusetts so as to establish venue in this district.

The defendant's motion to dismiss is allowed.