Paul Grafe v. Commissioner.
Grafe v. Commissioner
Docket No. 109844.
United States Tax Court
1946 Tax Ct. Memo LEXIS 263; 5 T.C.M. (CCH) 81; T.C.M. (RIA) 46035; February 14, 1946
H. M. Frost, Esq., 756 S. Broadway, Los Angeles, Calif., for the petitioner. Byron M. Coon, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: This case involves a deficiency of $3,564.06 in income tax for 1938. The issue is whether dividends received in 1938 on certain stock held by petitioner should be treated as his separate income or as community income of petitioner and his wife. Petitioner alleges that he and his wife were residents of Dallas, Texas, in 1923 or 1924 when an oral agreement was made under which he was to receive stock in the company by which he was employed, that he has maintained business connections in Texas and that it has been his intention to return to Texas when the business warrants, and that he and his wife orally agreed and understood at *264 all times that the stock was community property. Findings of Fact Petitioner and his wife have been residents of California since September, 1934. They filed separate income tax returns for the taxable year 1938 with the collector of internal revenue at Los Angeles, California. During the taxable year petitioner was vice-president of W. E. Callahan Construction Company, a Nebraska corporation, having its principal place of business at Dallas, Texas, and held in his name 1.322 shares of stock in that corporation. He received dividends from the company in 1938 amounting to $33,050 of which amount half was reported on his return and half upon his wife's return. Petitioner and his wife, Helen T. Grafe, were married December 11, 1917, and ever since have lived together as husband and wife. Petitioner was born in Indiana and received his schooling in that state. He entered the Army in 1917 and was mustered out in 1919 when he returned to Indiana. After working in Indiana for a few weeks he went to Detroit, Michigan, where he worked during parts of 1919 and 1920. During 1920 he moved to St. Louis, Missouri, where he worked until sometime in 1921. In the fall of 1921 he went to Dennison, *265 Texas, remaining there until sometime in 1922. On May 1, 1922, he entered the employ of W. E. Callahan Construction Company and has at all times since been in its employ. He was then sent to Illinois as supervisor of construction on highway contracts. He resided in various small towns in that state until about September, 1923. In September and October 1923 he was in Pueblo, Colorado, inspecting some proposed work for the company and then was sent to Dallas, Texas, where he stayed until May 1924. At Dallas he served as foreman at a gravel pit and later worked in the company's office as an assistant to W. E. Callahan, president of the company, looking over reports and scanning magazines for projected new work. In 1924 he was sent to St. Louis for the company, remaining there in active management of work for the company until December 1931. In December 1931 he was sent by the company to the Canal Zone to supervise construction at the Madden Dam. In the fall of 1934 he was sent to Los Angeles to supervise construction by the company of the All-American Canal. He remained in Los Angeles in connection with contracts in which the company was interested. On these various assignments of duty *266 his wife accompanied him. While residing in Los Angeles he occasionally made business trips to Texas. On April 30, 1924, the stock of the W. E. Callahan Construction Company was owned as follows: W. E. Callahan 509 shares, E. B. Heyser 490 shares and H. T. Johnson 1 share, at which time a 100 percent stock dividend was declared. In 1924 Callahan decided to buy Heyser's shares. He then told petitioner that if petitioner would stay with the company, go to St. Louis, and open an office there to get some work, he would give petitioner all or part of Heyser's stock when he finally secured it. Petitioner went to St. Louis in May or June 1924 and was active in managing the work secured there until December 1931. On November 21, 1927, the company purchased Heyser's 980 shares for $294,000 and ordered them placed in the treasury subject to disposition by the board of directors. Sometime in 1928 Callahan informed petitioner he had secured all of Heyser's stock and in line with the agreement made in Dallas he was going to give petitioner 590 shares. The minutes of the stockholders' meeting held on February 2, 1928 recited that the 980 shares purchased by the corporation from E. S. Heyser *267 had been sold at par to W. E. Callahan, Paul Grafe and William McCormick. On April 20, 1928, a certificate for 590 shares was issued to petitioner. On February 3, 1930, a stock dividend of 150 percent was ordered. On May 21, 1936, an issue of Class B stock was ordered, of which petitioner received 97 shares. Petitioner has owned no residential property in any of the places in which he has lived since 1919. Petitioner filed income tax returns with the collector at St. Louis, Missouri, for the years 1930, 1931, 1932 and 1933. His wife filed no returns for those years. In his 1930 and 1933 returns petitioner reported dividends on the stock as his. No dividends were reported in his 1931 or 1932 returns. Petitioner and his wife filed separate returns with the collector of internal revenue at Los Angeles on a community property basis for 1934, 1935, 1936, 1937 and 1938. No dividends from this stock were reported in the 1934 or 1937 returns. The returns for 1935 and 1938 included dividends on the stock of the company, half reported on petitioner's return and half upon his wife's return. The return for 1936 showed dividends on W. E. Callahan Construction Company stock in the amount of *268 $12,000, the entire amount being included in petitioner's return. Petitioner was not domiciled in Texas in 1924 or thereafter. The W. E. Callahan Construction Company stock held in the name of petitioner was his separate property. Opinion Petitioner contends that the amount of $33,050 received in 1938 as dividends on stock of W. E. Callahan Construction Company was community income because (1) he acquired the right to receive the stock while domiciled in Texas in 1924 and (2) he and his wife orally agreed and understood that the stock was to be community property. Respondent determined that the entire amount is includible in petitioner's income. The petitioner was a resident of Indiana until 1919, except for a period of military service from 1917 to 1919. Thereafter he resided for various periods in Michigan, Missouri, Texas, Illinois, Colorado, the Canal Zone and California. He was in Texas as an employee of W. E. Callahan Construction Company from October 1923 to June 1924, a period of about eight months. His argument is that while there he entered into an agreement with W. E. Callahan whereby if he would continue in the employ of the company, open an office in St. Louis *269 and procure and supervise work for the company there, and Callahan obtained the stock then held by E. B. Heyser, petitioner would be given all or a part of that stock when it was acquired; that at that time, he formed the intent to make Dallas, which was the headquarters of the company, his permanent headquarters or place of business, and that Dallas thereby became his domicile and has since remained his domicile. The stock was acquired before petitioner and his wife moved to California. If they were domiciled in a non-community-property state at the time the stock, or the initial right to it, was acquired, the stock would be separate property of petitioner. On the other hand, if they were domiciled in Texas at the time, the stock would be community property and the dividends thereon would be community income. The respondent's determination that the dividends were separate income of petitioner is presumptively correct. Inherent in it is the conclusion that petitioner was not domiciled in Texas as he contends. The burden is upon the petitioner to show that he established a domicile in Texas in 1924. The domicile of a person has been defined as the place where he has his true, fixed, *270 permanent home and principal establishment, to which, whenever he is absent, he has the intention of returning. . The parties agree that petitioner was domiciled in Indiana at least until 1919. As stated in , a domicile once acquired is presumed to continue until it is shown to have been changed, and to show the change, two things are indispensable, first, residence in the new locality, and second, the intention to remain there. Union of fact and intention is necessary. Either without the other is insufficient. Until a new domicile is acquired, the old one remains. Furthermore, residence in fact and the intent to make the new residence the permanent residence must be concurrent. ; Morris v. Gilmer, 129 U.S. 315; ; certiorari denied, . According to petitioner's testimony, he was in Pueblo, Colorado, in October 1923 when Callahan visited him and instructed him to pack up and go to Dallas. Petitioner made the trip with his wife by train. He went to Dallas *271 to continue working for the company, but without knowing what his next assignment was to be. Petitioner does not contend that he then had the intention of making Dallas his home. The intention is said to have related to the time of the agreement whereby he was to acquire the stock. He was in Dallas only some seven or eight months. Shortly after the agreement was made, and pursuant to the agreement, he went to St. Louis. Petitioner testified that when he went to St. Louis in May or June 1924, he intended to return to Dallas after his work in St. Louis was completed. While his testimony is, of course, to be given full and fair consideration, it is nevertheless subject to the infirmities of any self-serving declaration, in that it may lack persuasiveness, or may be contradicted or negatived by other declarations or inconsistent acts. . In evaluating a person's declarations as to the intent he had to make a given place his permanent home, consideration should be given to such factors as the place of his origin, his family connections, the seat of his fortune, his exercise of political rights, payment of personal or local taxes, *272 retention of a house of residence, investments in local property or enterprise, and his affiliations with the professional, religious or fraternal life of the community. ; ; and In applying these criteria, it is apparent that petitioner has not proved that he established a domicile in Texas in 1924. He did not own a home in Dallas. No evidence was introduced to show the nature of his living quarters in Dallas, or that at any time while in Texas he possessed household goods or furniture or established a home in fact. He did not vote or retain a voting residence there. It is not shown whether he paid local taxes there. Nor is it shown that in 1924 he had any investments in property or enterprise in Texas, or that upon leaving Dallas he retained affiliations there except with the company employing him. His mother lived in Indiana as did his wife's parents. He has never since lived in Texas and stops at a hotel when visiting Dallas on business. It is not shown that his wife or family have ever returned to Texas. In filing income tax returns for 1930, 1931, *273 1932 and 1933 he filed a single return reporting all his salary and dividends and did not attempt to claim a Texas domicile or the right to file on a community-property basis. While stationed at the Canal Zone he filed returns with the collector of internal revenue at St. Louis, indicating that he did not consider himself domiciled in Texas at that time. We think the evidence is insufficient to establish as a fact that in 1924 petitioner had a fixed abode in Texas and had at that time the intent to make his home there. Accordingly, we have found that petitioner was not domiciled in Texas in 1924 or thereafter. Compare , affirmed . Petitioner testified that he intends to return to Dallas when his work in California is finished and that he is now president of the company and visits Texas some nine or ten times a year, and the evidence shows that in 1938 he had investments in Texas in addition to his interest in the company. Since petitioner has not resided in Texas since 1924, and the intent essential to the establishment of domicile must be concurrent with residence, evidence of his intention subsequent to *274 1924 will not suffice. Since we have determined that petitioner was not domiciled in Texas in 1924, it follows that the W. E. Callahan Construction Company stock he acquired pursuant to the agreement made in Texas for the performance of personal services was not community property but was the separate property of petitioner when acquired. Petitioner alleges that there was an oral agreement between himself and his wife that the stock was community property and the husband and wife testified that in conversations they had agreed that it was jointly owned or that each had a half interest. This agreement was said to have existed before they left Dallas to go to St. Louis. Under Texas law separate property may be changed to community property only by a writing amounting to a conveyance. ; McKay on Community Property, 2nd Ed. § 864; , certiorari denied, . If an oral agreement was made in Texas to the effect that the stock was community property and was subsequently reaffirmed in California, other facts and circumstances of record negative a consummation *275 of any such agreement. In , it was stated that under the laws of California, as interpreted by the courts of that state, separate property of a husband and wife may be transmuted into community property by oral agreement, provided the understanding to that effect is executed, but that such an oral agreement must be proved by facts sufficient to establish it. The testimony of the husband and wife in that case, standing alone, was not considered sufficient for this purpose. The case of , cited by petitioner, is factually distinguishable. There stock was purchased with funds borrowed on the credit of both husband and wife from the husband's employer and was issued in the name of the wife as agent. In the present case it is not shown that the purported agreement was carried into effect after petitioner moved to California. All stock certificates, including some issued as late as 1936, were in petitioner's name alone. In filing returns for 1935 the dividends on the stock were divided between petitioner and his wife, but in the returns for 1936 the dividends were included in full in petitioner's return. *276 In the return for the taxable year the dividends were again divided. The record does not explain this inconsistent treatment. Had there been a consummated agreement that the stock was community property the dividends would have been handled differently. The reporting of the dividends for 1936 as petitioner's separate income indicates that he himself did not consider the stock as community property. We consider the evidence insufficient to establish that petitioner and his wife owned the stock as community property. The facts and circumstances of record do not bear out petitioner's contention that the stock was other than the separate property of petitioner and we have so found. Since petitioner was not domiciled in Texas and the stock was his separate property, the dividends received in 1938 upon the stock were separate income of petitioner as determined by respondent. Decision will be entered for the respondent.