# RAPHAEL v. TRASK.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 229. Argued April 18, 19, 1904.—Decided May 2, 1904.

Diverse citizenship does not exist, giving a Circuit Court of the United States jurisdiction of an action affecting the disposition of a fund held by a copartnership doing business in a State other than that of complainant, if any of the partners are citizens of complainant's State; nor can the jurisdiction of such an action be maintained, either for the purpose of enforcing additional security or to stay waste, as ancillary to a foreclosure suit pending in another Circuit Court of the United States, where there is no privity of contract or trust relations between complainant and defendants, and the record does not show that the defendant in the foreclosure suit could not respond to any judgment that might be recovered therein.

THIS suit was begun by filing a bill in the Circuit Court of the United States for the Southern District of New York, seeking an injunction restraining the defendants, Spencer Trask & Company, from selling certain shares of capital stock of the Rio Grande and Western Railway Company to the Denver and Rio Grande Railway Company, unless a sufficient sum of money was deposited to indemnify the complainant upon the demand hereinafter set forth.

It appears from the allegations of the bill that Nathaniel W. Raphael, since deceased, now represented by Martha Raphael as administratrix, on January 7, 1901, filed a bill in the United States Circuit Court for the District of Utah against the Wasatch and Jordan Valley Railroad Company and the Rio Grande and Western Railway Company and the Union Trust Company of New York, the object being to foreclose a mortgage given by the Wasatch and Jordan Valley Railroad Company, and to redeem from two independent mortgages certain branch railroads in the possession of and claimed to be owned by the Rio Grande and Western Railway Company.

While that suit was pending the present action was begun. The bill averred that the defendants, composing the firm of Spencer Trask & Company, had undertaken to obtain stock of the Rio Grande and Western Railway Company, and to sell the same to the representatives of the Denver and Rio Grande Railway Company, which company was proceeding to acquire the railroad of the Rio Grande and Western Railway Company by acquiring the common and preferred stock of that company.

It is averred that Spencer Trask & Company, while negotiating the sale of said stock, learning of the foreclosure proceedings commenced by Raphael in the Utah court, made the following public advertisement:

"Since the commencement of the negotiations one Raphael has instituted in the United States Circuit Court of Utah a suit against the title of the Western Company to the Bingham and Alta spurs of its railroad; and in making the contract for the vendors our firm gave its personal guarantee against any liability of the company in that suit. Although the company's solicitors are confident of success, it is proper that our guarantee be ratably shared by all who avail themselves of the contract made by us for the vendors. From the $80 per share and interest mentioned above we shall, therefore, deduct such amount per share as counsel shall advise us will amply protect us upon such guarantee. Such amount will be held in a special trust."

The bill further avers:

"That the members of said firm of Spencer Trask & Company are not parties to the suit pending in Utah, and that there is no agreement existing between complainant and the other holders of the outstanding bonds similar to complainant's bonds, and Spencer Trask & Company, by which the said proposed 'fund' shall be applied toward the satisfaction of complainant's bond and the other outstanding bonds."

There are further allegations that the complainant—

"Is informed and believes that if said consolidation as set forth in the scheme contemplated by the advertisements re-

ferred to, is allowed to be carried out, without some stipulation
between your orator and the members of the said firm of
Spencer Trask & Company, as to the custody of the said fund,
proposed to be created as aforesaid, the rights of remote pur-
chasers of the mortgage premises, upon which complainant
claims a lien, will have intervened pending complainant's suit
in Utah, so that if complainant succeeds at the final hearing
of his suit in Utah, it will require the bringing into the suit, as
defendants, such remote purchasers, as the Denver and Rio
Grande Western Railway Company and their proposed suc-
cessors."

The prayer for relief is:

"That a preliminary injunction be issued restraining the
said members of the firm of Spencer Trask & Company from
selling the said shares of the capital stock of the Rio Grande
Western Railway Company to the Denver and Rio Grande
Western Railway Company as set forth in the said advertise-
ments of Spencer Trask & Company, and which injunction your
orator prays may be made perpetual upon the final hearing of
this suit, unless the firm of Spencer Trask & Company shall
agree to turn over to some trust company in the city of New
York, at and before the completing of said sale of said shares, a
sum of money which may be determined by this court, out of
the proceeds of said sale, as will be sufficient to satisfy com-
plainant's claim and the other outstanding bondholders similar
to his own, upon the final hearing of complainant's suit in
Utah."

The bill also refers to the affidavit of one of the defendants,
George Foster Peabody, filed in the Utah suit. This affidavit
is annexed to the bill of complaint, and is in part as follows:

"One stipulation of the agreement for the sale of common
stock of the Rio Grande Western Railway Company made by
my banking firm of Spencer Trask & Company is that my said
firm shall guarantee the purchaser against any claim of the
complainant in this suit. The statement in that respect con-
tained in the circular letter of my firm to the holders of the

common stock of that company, of which one of such cuttings is a copy, is as follows:

" 'Since the commencement of the negotiation one Raphael has instituted in the United States Circuit Court for Utah a suit against the title of the Western Company to the Bingham and Alta spurs of its railroad; and in making the contract for the vendors our firm gave its personal guarantee against any liability of the company in that suit. Although the company's solicitors are confident of success, it is proper that our guaranty. be ratably shared by all who avail themselves of the contract made by us for the vendors. From the $80 per share and interest mentioned above we shall, therefore, deduct such amount per share as counsel shall advise us will amply protect us upon such guarantee. Such amount will be held in a special trust.'

"The result of this provision is that if the complainant have any just claim, its payment is secured not only by the great excess of the assets of the Rio Grande Western Company itself over its debts, but also by a special amount to be held in trust. I am advised by the counsel of the Western Company that such provisions is a fact against, and not in favor of, the complainant's motion, as it gives a greater assurance that, if the complainant's claim shall be established, it will be paid.

"The statement of the said Raphael in his affidavit, that the retention of a fund to indemnify my said firm for their proposed guaranty against complainant's claim, is an attempt on the part of the Western Company to hinder and delay the complainant, is unqualifiedly false. The Western Company is in no way a party to the agreement or provision for such indemnity or such guaranty. The Western Company, if the purchase of its common stock shall be completed, will be itself indemnified against any claim of complainant."

To the bill of complaint the defendant filed a plea to the jurisdiction of the court, appearing for that purpose and no other, setting forth that the plaintiff at the time of the commencement of the suit was, and continues to be, a citizen of the State of New Jersey; that two of the defendants, Charles J.

Peabody and Edwin M. Bulkley, were, at the time of the filing of the bill and the beginning of the suit, citizens of the State of New Jersey, and were not and had not been for over eight years either citizens or residents of the State of New York.

The cause being brought on for hearing upon the plea, the bill of complaint was dismissed for want of jurisdiction.

Subsequently an application was made for leave to amend the bill and file a supplementary bill, which application was denied.

Upon dismissing the bill, for want of jurisdiction, the trial court certified the question of jurisdiction and the cause came here by direct appeal.

*Mr. Charles Locke Easton* for appellant.

*Mr. William Mason Smith* and *Mr. Edward M. Shepard* for appellees.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

The Circuit Court sustained the plea of the defendants upon two grounds: 1, that the suit could not be maintained for want of the required diversity of citizenship; and, 2, that it could not be maintained as an ancillary or dependent proceeding for want of proper averments to bring the case within that branch of equity jurisdiction.

As the offer to amend and file a supplemental bill was not entertained in the court below, and as the exercise of this discretion is not reviewable here, except in special cases, we are only concerned with the correctness of the conclusion of the Circuit Court in dismissing the original bill.

As the case was brought on for consideration on bill of complaint and plea, the allegations of the plea are taken as admitted as upon demurrer thereto. *Farley* v. *Kittson,* 120 U. S. 303, 314.

Looked at as an original bill, it is elementary that all the

parties on one side of the controversy must be of diverse citizenship to those on the other. It is argued that the relief is sought not against the firm or its members personally, but to restrain the disposition of the fund pending the controversy or to require it to be paid into the hands of a holder for the benefit of the complainant as his rights may be established, and as some of the defendants are residents of New York, the bill can be maintained.

But we cannot concede the soundness of this claim. The action is against the firm, and every member of the firm is interested in the result. The proceeding is against them jointly. As between the complainant and the members of the firm who are residents of the State of New York there is no separable controversy. The partners are jointly and equally interested in the fund alleged to be held and in the disposition of the suit commenced by the complainant. This proposition is so plain as to scarcely require the citation of authorities. In *Stone* v. *South Carolina*, 117 U. S. 430, the State of South Carolina commenced an action to recover certain money from partners. Stone, one of the partners, sought to remove the case on the ground that he was a citizen of the State of New York. The application was denied, and upon this subject Mr. Chief Justice Waite, speaking for the court, said:

"The cause of action is joint, and only one of the defendants petitions for removal. . . . Neither is there any separable controversy in the case, such as might, if the necessary citizenship existed, allow Stone alone to remove the suit without joining Corbin with him in the petition for removal. The money sued for was received by the defendants as partners, and they are liable jointly for its payment, if they are liable at all."

We have no doubt that the case cannot be sustained as an original suit dependent upon diverse citizenship.

Can the bill be sustained as an ancillary or supplementary bill?

We had occasion to consider the nature of ancillary bills in

the late case of *Julian* v. *Central Trust Co.*, decided at this
term, 193 U. S. 93, and we are unable to find any precedent in
the reported cases or text books which will maintain this bill in
that aspect.   Ancillary bills are ordinarily maintained in the
same court as the original bill is filed, with a view to protecting
the rights adjudicated by the court in reference to the subject
matter of the litigation, and in aid of the jurisdiction of the
court, with a purpose of carrying out its decree and rendering
effectual rights to be secured or already adjudicated.   Story
Eq. Pleading (8th ed.), § 326 *et seq.; Root* v. *Woolworth*, 150 U. S.
401, 411; Bates Federal Equity Procedure, vol. 1, § 97.

In the present case, the original action was begun to fore-
close a mortgage upon property in Utah.   It had nothing to do
with the sale of the stock by the stockholders represented by
Spencer Trask & Company.   The stockholders were not parties
to the Utah bill, nor could any relief be had against them in
that suit.   The purpose of Spencer Trask & Company in calling
upon the vendors of the stock to deposit a certain amount,
while having reference to the suit begun in Utah, did not evi-
dence any agreement upon their part to indemnify the com-
plainant because of any obligation or desire to protect him, but
was a matter between that firm and the stockholders for whom
it was acting.   The purpose was to protect the selling firm,
because of its guaranty to the purchasers of the stock, in case
of any diminution in the value of the property in the event
that the complainant prevailed in the suit in the Utah court.
There was no privity of contract or trust relation between the
complainant and defendants to this suit.

It is true that the affidavit of George Foster Peabody, upon
which much reliance is had, gives some support to the claim
that the advertisement embodied an agreement for the in-
demnification of the complainant.   At most this is but the con-
struction that Mr. Peabody placed upon the advertisement,
and could not enlarge the rights of the complainant nor in any
way change the true nature of the proceeding.   Nor does it
appear that this fund, had the complainant stood in such rela-

tion of privity of contract that he could claim the benefit of it, was necessary to the protection of the complainant's right in the property held by the railroad company, against which he was proceeding in Utah. There is nothing to show that the railroad company, with the large surplus which it was alleged to have accumulated, could not have responded to any decree which the complainant might have recovered in the foreclosure suit.

Nor can the bill be maintained as one to stay waste. There is no estate of complainants in the hands of Spencer Trask & Company which is likely to be wasted pending the suit. As the complainant shows no legal or equitable right to the fund furnished by the stockholders, neither the method of its management nor its protection from diminution can concern him.

We are of opinion that the Circuit Court was right, and that the bill cannot be maintained either as an original or ancillary proceeding.

*Judgment affirmed.*