ANDERSON et al. v. BASSMAN et al.

(Circuit Court, N. D. California. August 5, 1905.)

No. 12,857.

1. JURISDICTION OF FEDERAL COURTS—STATUTORY LIMITATION.
    The jurisdiction of a federal court is limited to that conferred by the Constitution and statutes of the United States, and cannot be acquired or enlarged by consent.
    [Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 792.]

2. SAME—DIVERSITY OF CITIZENSHIP.
    Where the jurisdiction of a federal court depends upon the diverse citizenship of the parties, if there are several coplaintiffs, each plaintiff must be competent to sue, and, if there are several codefendants, each defendant must be liable to be sued in such court.
    [Ed. Note.—Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

3. SAME—EVIDENCE OF WANT OF JURISDICTION—AFFIDAVITS.
    Under Judiciary Act March 3, 1875, c. 137, § 5, 18 Stat. 472 [U. S. Comp. St. 1901, p. 511], which provides that, if it shall appear to the satisfaction of the court at any time after suit has been brought that it is without jurisdiction, it must dismiss the suit, it is the duty of the court to consider affidavits showing its want of jurisdiction, although they are filed after the taking of testimony in the case has been closed.

4. SAME—DIVERSITY OF CITIZENSHIP.
    A circuit court of the United States is without jurisdiction of a suit against a number of defendants to enjoin the diversion of water from a stream by means of certain irrigation ditches, in some one of which each of the defendants is alleged to own an interest, where any one of the defendants is a citizen of the same state as complainant.

In Equity. On question of jurisdiction.

Alfred Chartz, D. W. Virgin, and N. Soderberg, for complainants.
Richard S. Miner and James M. Allen, for defendants.

MORROW, Circuit Judge. This cause has been submitted upon the merits, but in the record there are facts that raise the question of jurisdiction, and this question has been submitted to the court by the defendants in the course of the argument. The jurisdiction of this court is invoked on the ground of the diverse citizenship of the parties to the action. The complainants number 48, and are alleged to be citizens of Nevada. The defendants number 33, and they are alleged to be citizens of California. The cause of action against the defendants is alleged in the bill of complaint to be the wrongful acts of the defendants in depriving complainants of the waters of the West Fork of the Carson river, and this wrong, it is alleged, is accomplished by the defendants by their maintenance of dams and ditches above the complainants on the river, for the purpose of diverting and wasting the waters of said river. These dams and ditches take the water from the river in California, depriving the defendants, who are located lower down the river in Nevada, of the natural flow of the stream.

The jurisdiction of a circuit court of the United States is limited, in the sense that it has no jurisdiction except that conferred by

the Constitution and laws of the United States; and a cause is presumed to be without its jurisdiction, unless the contrary affirmatively appears. When jurisdiction depends upon diverse citizenship, the absence of sufficient averments or of facts in the record showing such required diversity of citizenship is fatal, and cannot be overlooked by the court, even if the parties fail to call attention to the defect, or consent that it may be waived. Consent can never confer jurisdiction upon a federal court. Thomas v. Board of Trustees, 195 U. S. 207, 210, 25 Sup. Ct. 24, 49 L. Ed. 160. In controversies between citizens of different states, where the jurisdiction of the courts of the United States depends upon the citizenship of the parties, if there are several coplaintiffs, each plaintiff must be competent to sue, and, if there are several codefendants, each defendant must be liable to be sued in this court or the jurisdiction cannot be maintained. Strawbridge v. Curtiss, 3 Cranch, 267, 2 L. Ed. 435; Coal Co. v. Blatchford, 11 Wall. 172, 20 L. Ed. 179; Peninsular, etc., Co. v. Stone, 121 U. S. 633, 7 Sup. Ct. 1010, 30 L. Ed. 1020.

John E. Johns is named as one of the defendants in this action, and it is alleged in the bill that the defendants (including John E. Johns) are citizens, and each of them is a citizen, of the state of California, and they, and each of them, are actual and bona fide residents of Alpine county, state of California, excepting A. F. Dresser, who is a resident of Alameda county, Cal. On January 6, 1900, there was filed in the clerk's office an acceptance of service of subpœna by the defendant John E. Johns, as follows:

"Carson City, Ormsby County, State of Nevada.

"I hereby accept service of subpœna in the case of John Anderson et al. against Henry Bassman et al., which case has been brought in the Circuit Court of the United States, Ninth Circuit, Northern District of California, and hereby authorize my appearance therein, as one of said defendants, and I fully waive all objections which I could legally make thereto."

On April 22, 1903, the defendant John E. Johns entered his appearance in this case as of date January 15, 1900. But no answer has been filed by this defendant to the bill of complaint. It appears from the evidence that Johns was at one time the owner of a tract of land in Alpine county, Cal., irrigated by water taken from the West Fork of the Carson river, and that Johns was a part owner of the ditch that conveyed the water from the river to his land; that about the time of the commencement of this action Johns conveyed his land in Alpine county and his interest in the ditch to one Mary Jones, a citizen of Nevada. The defendants contend that either the defendant John E. Johns is an indispensable party to this action, or his grantee, Mary Jones, is; that if Johns owned land in Alpine county, Cal., irrigated by a ditch taking water from the West Fork of the Carson river, in which ditch Johns was a part owner, and he was a citizen of Nevada when this suit was instituted, he was a citizen of the same state as the complainants, and the jurisdiction of this court cannot be maintained, because of Johns' citizenship in the state of Nevada; that Mary Jones has not been made a party to the action; that she is an indispensable party, if

Johns is not, by reason of his conveyance of his property to her; that she is a citizen of Nevada, and making her a party to the cause will oust this court of jurisdiction.

Johns was called as a witness by the complainants in rebuttal on November 7, 1901. He then testified that he resided in Carson City, Nev. He also testified that he purchased a small place in Diamond Valley, Cal., in 1875, but did not move there until 1876; that in 1899 he sold out—"a year ago last spring." He was asked if it was after this suit was brought. His answer was: "Yes; I believe so." The testimony in this case was closed by stipulation on March 27, 1902. Thereafter, on April 23, 1903, Johns filed an affidavit in this court, in which he states that he is the person who was formerly the owner of the John E. Johns ranch in Diamond Valley, Alpine county, Cal., now owned by Mrs. Mary Jones; that he is named as one of the defendants in this action; that on the 15th day of August, 1898, he became a resident of Ormsby county, Nev., and ever since has been a resident of said county and state; that in December, 1899, at the time this action was brought, he was a resident of said county and state; that Mrs. Mary Jones, the present owner of the Johns ranch, at the time of her purchase of the same from him was, and now is, a resident of Douglas county, state of Nevada. There was also filed, on April 24, 1903, the affidavit of Judge N. D. Arnot, judge of the superior court of Alpine county, Cal., stating that he is well acquainted with said Johns; that for several years prior to 1897 Johns resided on the Johns ranch in Diamond Valley, Cal., but subsequent thereto he moved with his family to Carson City, Nev., where he has ever since resided; that on the 15th day of August, 1898, he became a registered voter in the Second ward of Carson City, Nev.; that on the 20th day of April, 1903, in said Carson City, the said Johns stated to affiant that he had voted in Carson City at the general election in Nevada for the year 1898; that he belonged in said state and was a citizen thereof when the present action was commenced in December, 1899. Affiant further states that he is slightly acquainted with Mrs. Mary Jones, who purchased the Johns ranch in Diamond Valley; that at that time she was a resident of Douglas county, Nev., and has since been a citizen of that state. The affidavit of Frank Smith, county clerk of Alpine county, Cal., filed on April 24, 1903, states that he is well acquainted with John E. Johns, who for many years prior to 1897 resided in and was a citizen of Alpine county, Cal.; that during the summer of 1898, when affiant was a candidate for the office of county clerk, he met Johns and engaged in conversation with him in regard to affiant's candidacy; that Johns then informed affiant that he was a resident and citizen of Ormsby county, Nev.; that ever since said time Johns, with his family, has resided in Carson City, Nev.

These affidavits of Johns, Arnot, and Smith were filed more than a year after the testimony in the case had been closed by stipulation, and under ordinary procedure would not be considered. But section 5 of the act of March 3, 1875 (18 Stat. 472, c. 137 [U. S. Comp. St. 1901, p. 511]), provides that, if it shall appear to the satisfac-

tion of the court at any time after suit has been brought that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of the court, the court must proceed no further, but dismiss the suit. In Morris v. Gilmer, 129 U. S. 315, 326, 9 Sup. Ct. 289, 292 [32 L. Ed. 690], the Supreme Court, construing this section, said:

"The statute does not prescribe any particular mode in which such fact may be brought to the attention of the court. It may be done by affidavits or the depositions taken in the cause may be used for that purpose. However done, it should be upon due notice to the parties to be affected by the dismissal."

The court is, therefore, not at liberty to disregard these affidavits, but must determine whether or not the case is properly within the jurisdiction of the court. Johns testified that he had no interest in the result of the action; but he also testified that the tract of land which he had owned in Diamond Valley was irrigated by water from the Carson river through the Dutch Valley ditch, which he says is the ditch entitled in these proceedings as "Snowshoe Thompson No. 2." This ditch appears to have been owned as follows: Peter Vallem, four-sixteenths of the whole main ditch; Thomas Barber, one-half of the remaining part after the ditch has passed Vallem's, or the equivalent of six-sixteenths of the whole; and Agnes Scossa and John E. Johns, the remaining part of three-sixteenths each of the whole. A. J. Chalmers is the engineer and surveyor who has resided in Alpine county, Cal., and Douglas county, Nev., and is familiar with the ditches described in this action. He testified that, with respect to Snowshoe Thompson No. 2 ditch, it carried water down to the Vallem ranch, about four or five miles from the point of diversion, and that it serves water to the Barber, Johns (or what used to be Johns), and Mrs. Scossa lands. All of them, he said, had an interest in the ditch, and this ditch irrigated about 160 acres formerly belonging to Johns. This land was not riparian to the West Fork of Carson river, nor was it bordering on it, and the water diverted by Snowshoe Thompson No. 2 ditch never returned to the West Fork of the Carson river. The owner of the Johns land and the Johns interest in Snowshoe Thompson No. 2 ditch is a proper party to the action, if it is to be maintained against this ditch. Whether this person is a necessary or an indispensable party is not now decided. But if either Johns or Mary Jones is the owner of this interest, and Johns is continued as a party defendant, or Mary Jones made a party defendant, this action must be dismissed for want of jurisdiction, as both are citizens of Nevada.

The evidence discloses the fact that the complainants are proceeding against 27 ditches taking water from the West Fork of the Carson river in Alpine county, but serious complaint is made against only 4 or 5 ditches. Snowshoe Thompson No. 2 ditch is one of these, and neither John E. Johns or Mary Jones was a partner in this ditch when the action was commenced; and both were then citizens of Nevada. In Raphael v. Trask, 194 U. S. 272, 24 Sup. Ct. 647, 48 L. Ed. 973, it was held that diverse citizenship did not exist, giving a circuit court of the United States jurisdic-

tion of an action affecting the disposition of a fund held by a copartnership doing business in a state other than that of the complainant, if any of the partners were citizens of complainant's state. The rule here declared is applicable to this case, and determines that this court has no jurisdiction of the case as it now stands.

A further question of jurisdiction is raised with respect to the amount in dispute. It is contended by the defendants that the allegation of the bill "that the matter in dispute in this suit, exclusive of costs, exceeds the sum and value of $2,000," is not sufficient to give the court jurisdiction; that each complainant must be competent to sue, and his claim must exceed the sum or value of $2,000, exclusive of interest and costs. The allegation is defective in failing to exclude interest from the jurisdictional amount of $2,000; and, with respect to the value of the several rights to be protected by the injunction, the complainants should further consider whether the bill should be amended. In a suit for injunction, the amount involved is the value of the right to be protected, or the extent of the injury to be prevented, by the injunction. Mississippi & Missouri Railroad Co. v. Ward, 67 U. S. (2 Black) 485, 492, 17 L. Ed. 311; Herbert v. Rainey (C. C.) 54 Fed. 248, 252; Railway Co. v. McConnell (C. C.) 82 Fed. 65; Humes v. City of Fort Smith (C. C.) 93 Fed. 857, 862. The evidence tends to show that, with respect to each of the complainants, the right to be protected and the injury to be prevented exceeds the sum or value of $2,000, exclusive of interest and costs; but, as the complainants have asked leave to amend the bill in this particular, if complainants, upon further consideration, deem the amendment necessary, the amendment will be allowed.