This matter comes before me on a petition by the defendant All Continent Corporation, for an order removing the cause to the United States district court.
Counsel for the complainant opposed the removal and says, first, the petition for removal was not filed within the time limited by statute. The bill of complaint was filed October 13th, 1936, and subpoena duly served. Defendants' answers, under rule 76, "shall be filed within twenty days after the service date of the subpoena," but by rule 2 it is provided, "the time limited in these rules for doing any act may, for good cause, be extended by order, either before or after the expiration of the time."
Under rule 76 the answers of the defendants were due on or before November 4th, 1936, but on October 28th, 1936, the court entered an order as follows:
"Ordered, that the time of the defendants * * * to answer, plead, demur or otherwise move with respect to the bill of complaint, be and the same is hereby extended to and including the 8th day of December, 1936."
The "good cause" for the order was consent of all parties to the extension of time in order that defendants might have opportunity to investigate the facts and law pertinent thereto, in order to determine upon the future procedure with respect to the bill of complaint. *Page 220 
The requirements of 28 U.S.C.A. § 72, are that the petition for removal be filed in the "state court at the time or at any time before the defendant is required by the laws of the state or the rule of the state court in which such suit is brought to answer," c.
The petition for removal was filed on December 3d 1936, and was, therefore, before the time the defendant All Continent Corporation was required to answer under the rules of this court. The order extending the time was in conformity with the rules and merely made operative rule 2 in conjunction with rule 76. Rule 2 must be read in conjunction with rule 76, and, taken together, they constitute the time "before the defendant is required by * * * the rule of the state court * * * to answer."
It is true that Judge Rellstab, in August of 1916, in Pilgrim
v. Aetna Life Insurance Co., 234 Fed. Rep. 958, decided otherwise, and it is likewise true that at that time that able jurist said: "This question has not been passed upon in this judicial circuit." But since the time of that decision the circuit court of appeals of the third circuit, in BankersSecurity Corp. v. Insurance Equities Corp., 85 Fed. Rep. (2dSeries) 856, have held to the contrary and pointed out that:
"A number of the inferior courts, mostly before the case ofAyers v. Watson, 113 U.S. 594; 5 S.Ct. 641; 28 L.Ed. 1093,
held that the time for filing a petition for removal from the state to the federal court could not be extended by stipulation of the parties, but this position does not seem to be in harmony with the declarations of the supreme court. These declarations led to the change of the position in the southern district of New York."
It is true that the Ayers Case, cited by the circuit court of appeals, was decided long before that of Pilgrim v. Aetna LifeInsurance Co., supra, but it is also true that in the latter case there was no review of the then existing authorities.
But it is argued that "what the court said (Bankers SecurityCorp. Case) constituted nothing but dicta" and this is probably true, but that court said: *Page 221 
"We have thought it best to state what we think the law is and indicate what the practice in this court should be."
This court is not advised of any decision in the courts of this state dealing with this question, but I am furnished with an abundance of authorities in support of the rules that the filing of a petition for removal at any time after the time limited for the filing of the answer by the rule of the court is fatal, even though that time be extended by an order of the court, stipulation of the parties or otherwise, as well as of an abundance of authorities in support of the view laid down by the circuit court of this district, supra. A great number of these authorities, pro and con, are cited in 54 C.J. 307 § 207
(2).
It is conceded that the rule in the southern district of New York and in the State of Pennsylvania is that a petition for removal is in time if filed before the expiration of any extension to plead, given by special order of the court, if the order of the court is authorized by the rules thereof. See (for New York) Gleason v. H.M. Byllesby Co. (Sup. Ct., specialterm, New York County, September 20th, 1936),290 N.Y. Supp. 436, wherein Mr. Justice McLaughlin held, in accordance with the decision of the United States court for the southern district of New York, that an application for removal is timely if made before an answer is required to be served, whether the time has been extended by the state court, by a state statute or by stipulation of the parties. As to the rule in Pennsylvania, see citations in Bankers Security Corp. Case, supra.
Being at liberty, in so far as the court of chancery is concerned, to adopt the rigid rule of construction of some jurisdictions, or the rule of less rigidity, which it seems to me is more in accord with modern decisions and more nearly accords with a proper interpretation of section 29 of the Judicial Code, my conclusion is that the petition for removal in the instant case was in time.
The next ground of opposition to the petition is that there is no separable controversy between the complainant, a citizen of New Jersey, and the defendant All Continent Corporation, a corporation of Delaware. *Page 222 
Section 28 of the Judicial Code (28 U.S.C.A. § 71), in providing for removal of causes from state to federal courts, states:
"And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the district court of the United States for the proper district."
In order to decide the question involved it is necessary to analyze the bill of complaint, the allegations therein and as contained in the petition for removal being decisive as to the separability of the controversy. Shapiro v. Christian Bahnsen,Inc., 117 N.J. Eq. 105.
The bill of complaint is composed of four counts as causes of action. The first cause of action is dealt with in forty-six numbered paragraphs, from 1 to 46, inclusive, wherein (eliminating paragraphs 11 to 15, both inclusive) complainant charges that William Fox, intending to hinder, delay and defraud creditors, formed the All Continent Corporation and transferred all of his assets to it; that the All Continent Corporation is and was merely the alter ego of Fox and that its assets are his and he, being a bankrupt, his trustee is entitled thereto.
Paragraphs 11 to 15, inclusive, in the first cause of action, seek to set aside as fraudulent a trust agreement made by Fox for the benefit of his wife, children and grandchildren, to the end that the trustee in bankruptcy may regain possession of all the corporate stock of the All Continent Corporation, which stock forms the corpus of the trust created by Fox for the benefit of his wife and others.
The remaining causes of action (2, 3 and 4) seek to set aside as fraudulent transfers of property by Fox to Mrs. Fox, Belle Fox and Mona Fox. The prayers for relief are:
"1. That All Continent Corporation, William Fox, Eva Fox, Belle Fox, Mona Fox, William Fox Tauszig and William Fox Schwartz, who are the defendants to this suit, may answer this bill of complaint and each statement therein made; *Page 223 
"2. That the said defendants may make discovery of what property and assets said All Continent Corporation owns and possesses or to which it is entitled, the character and nature thereof, its probable value, and where the same may be found;
"3. That said All Continent Corporation may be decreed to be the alter ego of said William Fox and that said All Continent Corporation and said William Fox are one and the same;
"4. That all of the assets of said All Continent Corporation may be decreed to be the assets and property of said William Fox;
"5. That said All Continent Corporation may be decreed to hold all of the assets and property claimed to be owned by it and standing in its name, in trust for said William Fox, bankrupt, and/or this complainant, trustee in bankruptcy of said William Fox, bankrupt;
"6. That said assignment and transfer of assets and property made by said William Fox to said All Continent Corporation between the dates of December 23d and 29th, 1930, in the manner hereinbefore set forth, as well as the assignment and transfer of said brokers' credits at or about the same time, may be set aside and held to be fraudulent and declared to be null and void and of no effect as against the creditors of said William Fox and this complainant;
"7. That said indenture of trust dated January 28th, 1931, may be set aside and held to be fraudulent and declared null and void and of no effect as against the creditors of said William Fox and this complainant;
"8. That the sale of the collateral which said Fox deposited with his said note with said All Continent Corporation which sale took place in the month of December, 1935, and by which said All Continent Corporation became possessed of said collateral and thereby claims to be the owner thereof, may be set aside and held to be fraudulent and declared to be null and void and of no effect as against the creditors of said William Fox and this complainant;
"9. That the assignment and transfer of the property and assets enumerated in said agreements dated February 3d 1936, and May 23d 1936, may be set aside and held to be *Page 224 
fraudulent and declared to be null and void and of no effect as against the creditors of said William Fox and this complainant;
"10. That said All Continent Corporation may be enjoined and restrained from selling, assigning, transferring, mortgaging, or otherwise disposing or of encumbering said assets and that said injunction and restraint shall date from the time of the filing of this bill of complaint and to remain in full force and effect until the further order of this court or until the matters and things in issue herein shall be finally determined;
"11. That this court shall appoint a receiver to take and hold in his possession all of the assets of said All Continent Corporation wherever the same may be found and whatever the same may be, to manage, control and preserve the same under the supervision of this court from the time of the filing of this bill of complaint, or as soon thereafter as his appointment can be made, until the matters and things herein issue can be finally determined;
"12. That said defendants Eva Fox, Belle Fox and Mona Fox may make discovery concerning any and all property or thing of value which may have heretofore been assigned or transferred by said William Fox to them or either of them;
"13. That all the assets and property herein alleged or claimed to have been assigned and transferred by said William Fox to said defendants Eva Fox, Belle Fox and Mona Fox may be decreed to be the assets and property of said William Fox;
"14. That said Eva Fox, Belle Fox and Mona Fox, either or all of them, may be decreed to hold all of the assets and property claimed to have been assigned and transferred to them by said William Fox as herein alleged, in trust for said William Fox, bankrupt, and/or this complainant, trustee in bankruptcy for said William Fox, bankrupt;
"15. That the said assignments and transfers of the assets and property of said William Fox to said defendants Eva Fox, Belle Fox and Mona Fox as hereinbefore set forth may be set aside and held to be fraudulent and declared to be null and void and of no effect as against the creditors of said William Fox and this complainant; *Page 225 
"16. That said Eva Fox, Belle Fox and Mona Fox may be enjoined and restrained from selling, assigning, transferring, mortgaging or otherwise disposing of or encumbering any of the assets and property so assigned and transferred by said William Fox to them and each of them as hereinbefore set forth and that said injunction and restraint shall date from the time of the filing of this bill of complaint and to remain in full force and effect until the further order of this court or until the matters and things in issue herein shall be fully determined;
"17. That this court shall appoint a receiver to take and hold in his possession all of the assets and property now in the possession of or claimed to be owned by said defendants Eva Fox, Belle Fox and Mona Fox, all or either of them, by reason of the alleged assignment and transfer to them by said William Fox as aforesaid, wherever the same may be found or whatever the same may be, to manage, control and preserve the same under the supervision of this court from the time of the filing of this bill of complaint or as soon thereafter as his appointment can be made, until the matters and things here in issue can be finally determined;
"18. That a writ of subpoena may issue commanding said defendants to answer this bill of complaint and to abide by such decree as this court may make in the premises;
"19. That this complainant may have such other relief in the premises as this court may deem just and proper."
An analysis of these prayers discloses, first, that the defendants (naming all) answer; second, discovery. Numbers 3 to 11, both inclusive, but excluding prayer No. 7, all seek relief with respect to the allegations of the bill of complaint in the first cause of action, and eliminating averments in paragraphs 11 to 15, both inclusive, of the bill of complaint, the question to be determined under the averments of the bill is, did Fox incorporate the All Continent Corporation, constitute that corporation his alter ego, transfer to it his assets, intending thereby to defraud his creditors, and if it is ascertained that he did so do, the appropriate relief will be to recapture these assets for the trustee under prayers 3 to 11, both inclusive, but excluding No. 7. *Page 226 
If it also be found on final hearing that the trust agreement was fraudulent, as alleged in paragraphs 11 to 15 of the bill of complaint, then that instrument will be set aside under the seventh prayer for relief.
The relief sought by prayers 12 to 17, both inclusive, relate to counts 2 to 4, inclusive, and defendants therein are Mrs. Fox, her daughters and grandchildren, and have absolutely nothing to do with the All Continent Corporation.
It will be observed that, outside of the trust agreement, there is no allegation that Belle Fox or any other defendant, outside of Mr. Fox and the All Continent Corporation, has ever had or now has custody of any of the assets of the All Continent Corporation, or that they or any of them participated in any of the alleged frauds with reference thereto, in so far as the transfer of assets from Fox to the All Continent Corporation is concerned, or in so far as the subsequent disposition of the transferred assets are concerned.
The relief sought against the wife, daughters and grandchildren is recovery of the capital stock of the All Continent Corporation and other assets formerly belonging to Mr. Fox, other than those assets he allegedly, in fraud of creditors, turned over to the All Continent Corporation.
It would seem, therefore, that the bill of complaint is of a two-fold nature (a) recovery from the All Continent Corporation for the benefit of creditors, through complainant as trustee, the assets which Fox transferred to the All Continent Corporation, and (b) recovery of other assets which Fox transferred to the other defendants than the All Continent Corporation.
As to (a), in addition to the fact that there is no allegation that any of the assets of the All Continent Corporation were ever transferred to any other defendant than that corporation, the allegations generally are that Fox, being possessed of stocks, bonds and securities of a value of over $6,000,000, "transferred and conveyed all of his said securities of the value aforesaid to All Continent Corporation." The bill then alleges that all of these securities continued to be under the sole control and dominion of Fox, to the exclusion of the All Continent Corporation, but that by virtue of a series of events *Page 227 
starting with December, 1935 (sale of collateral securing a note), and in February of 1936, and on May 23d 1936 (ExhibitsB and C), the All Continent Corporation recaptured or took over all of the assets of Fox, so that "said William Fox was divested of all property of every kind and description which was of any importance or value and he was thereby denuded of all the vast wealth" formerly his. It is this "vast wealth" held by the All Continent Corporation which the trustee seeks to recover from the All Continent Corporation.
It is also true that it is alleged that Fox alone was the originator of the entire fraudulent scheme and, while it is said that the other (Fox) defendants had knowledge thereof, no relief is asked of them, excepting as to assets received by them from Fox other than those held by the All Continent Corporation.
The allegation of paragraph 42 is that all of Fox's transactions with the All Continent Corporation "were each and every one of them a part of a general scheme or plan devised and put into effect by said William Fox," in fraud of creditors.
It is quite apparent from the above that the Fox defendants, other than possibly William Fox, are not all necessary parties to the cause of action (a), and that unless William Fox is a necessary party defendant as to this cause of action, the order for removal should be granted.
It is argued that the theory of the bill of complaint is that "the organization of the All Continent Corporation and all of the transactions had with respect to it was part of a scheme or plan to defraud creditors and that all parties are necessary parties."
Of course, the theory of counsel may not control but any party whose rights would be affected by the decree prayed for is a necessary party.
A decree ordering the All Continent Corporation to turn over to the trustee all its assets would not affect the rights of any defendant other than the All Continent Corporation. If these assets were transferred in fraud, as alleged, they never belonged to any one other than Fox and they now belong to his trustee in bankruptcy. Mrs. Fox and the daughters and *Page 228 
grandchildren never had any title or interest in these assets and no decree could be made against them with respect thereto.
If the rights of the defendants, other than the All Continent Corporation, are to be affected by a decree it must be one that holds that there was a fraud in the transfer of the stock of the All Continent Corporation to Mrs. Fox under the trust agreement and that that agreement, being void, the stock must be re-transferred by Mrs. Fox to the trustee of William Fox. This is a separate transaction, entirely distinct from the transfer from Fox to the All Continent Corporation of his other assets.
The All Continent Corporation was incorporated in October of 1930, the trust agreement was dated January 28th, 1931, the transfer of assets from Fox to the All Continent Corporation was made between December 23d and 29th, 1930. Of course, if fraud is found at the final hearing, so that the court decrees a return of all assets of the All Continent Corporation, the stock held by Mrs. Fox as trustee will be worthless. But the mere fact that as a stockholder of the All Continent Corporation she will be affected and that she, as such a stockholder, is a resident of New Jersey, does not either make her, as such stockholder, a necessary party, nor does her residence in New Jersey prevent the transfer to the federal court. The residence which must be ascertained is the corporate residence and not that of individual stockholders.
The latest decision on this point seems to be Puerto Rico v.Russell Co., 288 U.S. 476, wherein the court said:
"For almost a century, in ascertaining whether there is the requisite diversity of citizenship to confer jurisdiction on the federal courts, we have looked to the domicile of a corporation, not that of its individual stockholders, as controlling.Louisville, C. and C. Railroad Co. v. Letson, 2 How. 497;Rundle v. Delaware and Raritan Canal Co., 14 How. 80; Marshall
v. Baltimore and Ohio Railroad Co., 16 How. 314; LafayetteInsurance Co. v. French, 18 How. 404; Covington Drawbridge Co.
v. Shepherd, 20 How. 227; St. Louis and San Francisco RailwayCo. v. James, 161 U.S. 545; Patch v. Wabash Railroad Co.,207 U.S. 277. In its final form this rule of jurisdiction was stated in terms of a `conclusive presumption' *Page 229 
that the stockholders are citizens of the state of the corporate domicile, see Marshall v. Baltimore and Ohio Railroad Co.,supra, 328; Covington Drawbridge Co. v. Shepherd, supra, 233;St. Louis and San Francisco Railway Co. v. James, supra, 554, but even those who formulated the rule found its theoretical justification only in the complete legal personality with which corporations are endowed. Fictitious that personality may be, in the sense that the fact that the corporation is composed of a plurality of individuals themselves legal persons, is disregarded, but `it is a fiction created by law with intent that it should be acted on as if true.' Klein v. Board ofSupervisors, 282 U.S. 19, 24. This treatment of the aggregate for other purposes as a person distinct from its members, with capacity to perform all legal acts, made it possible and convenient to treat it so for purposes of federal jurisdiction as well." (Pages 479, 480.)
But it is said that in Shapiro v. Christian Bahnsen, Inc.,supra, the court, dealing with "facts identical with the facts herein" held otherwise. The fundamental difference in fact between the two cases is that in the instant case, in so far as the assets of the All Continent Corporation are concerned, complainant seeks the return thereof to him as trustee of Fox from no other defendant than the All Continent Corporation, while in the Bahnsen Case that complainant sought "a decree against each for such part only of the funds and securities as each may be found to hold now, or a money decree * * * for such part as they may have disposed of. The complainant seeks to hold all defendants liable for the total amount * * * not necessarily any one of them for the whole but each for a part thereof," c., and again the court was dealing with a situation where the individual defendants "transferred such property to themselves to hold under a corporate guise" while in the instant case the charge is that the corporation was the alter ego of Fox and no other person.
Is Fox a necessary party, i.e., an indispensable party, by which is meant one who has such an interest in the subject-matter of the controversy that a final decree cannot be rendered between the other parties to the suit without radically *Page 230 
or injuriously affecting his interest, or without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience? Sioux CityTerminal R. and W. Co. v. Trust Company of North America,22 C.C.A. 73, 75; 82 Fed. Rep. 124, 126. See, also, Rogers v.Penebscot Mining Co. (C.C.A.), 154 Fed. Rep. 606.
The only prayer for relief against Fox is that he answer and (2) "that the said defendants may make discovery of what property and assets said All Continent Corporation owns and possesses or to which it is entitled, the character and nature thereof, its probable value, and where the same may be found."
In view of the allegations of the bill to the effect that Fox divested and denuded himself of all of his vast wealth and that the All Continent Corporation is the possessor thereof (excepting the trust assets), the language of the prayer appropriately requires that the All Continent Corporation make discovery of all its property so received and so held, but the prayer for relief with respect to this property is not against Fox but against that corporation. The prayer for discovery is not in aid of establishing the alleged fraud but in aid of an ascertainment from the All Continent Corporation as to its assets received from Fox, and their value.
It would seem that the ultimate result of the litigation, if complainant is successful, must be a decree against the All Continent Corporation, requiring the transfer of all its assets to the trustee, and a decree against Mrs. Fox, as trustee, requiring her to transfer to the trustee all the stock of the All Continent Corporation held by her as trustee, but while these decrees would be predicated upon a finding that Fox created the All Continent Corporation in fraud of creditors and transferred his assets to it for that purpose, and also created the trust in the same manner, yet Fox has no interest in the litigation to be affected by these decrees. The trustee in bankruptcy represents his rights. All the transfers by Fox, either to the corporation or his wife, are good as between Fox and them, and if the trustee gets more than enough assets to pay *Page 231 
the creditors, the All Continent Corporation would get the excess on its assets, and the trust would likewise get any excess on the value of its stock.
This seems to be borne out by the case of Small v. Gilbert,56 Fed. Rep. 2d 616, wherein the court said:
"In a suit brought by a trustee in bankruptcy to set aside a conveyance alleged to be in fraud of creditors, the bankrupt is not a necessary party; it is assumed that he had no interest to be affected, except that which was represented by his assignee in bankruptcy, who brings the suit. Huntington v. Saunders,120 U.S. 78; 30 L.Ed. 580; Buffington v. Harvey, 95 U.S. 99;24 L.Ed. 381."
In the Buffington Case, on appeal, the court said:
"The appellant also insists that the original bill was defective for want of parties is not making the bankrupty a party. * * * The bankrupt had no interest to be affected, except what was represented by his assignee in bankruptcy, who brought the suit. As to the bankrupt himself, the conveyance is good; if set aside, it could only benefit his creditors. He would not gain or lose, whichever way it might be decided."
To like effect is Cox v. Wall, 99 Fed. Rep. 546; affirmed,101 Fed. Rep. 403, and reversed on other grounds in181 U.S. 244, and Harding v. Crosby (C.C.S.D., N.Y.), 17 Batchf.348; 11 Fed. Cas. No. 6050.
In Benton, Assignee, v. Allen, 2 Fed. Rep. 448, the court held that the bankrupt was not a necessary party in a suit to declare a deed null and void as a fraudulent transfer, and that "he might have been used as a witness without making him a party." And further, "a decree of nullity against the two Wilders would, by operation of law, vest the estate in these lands in the assignee without any decree of nullity of the deed as against the bankrupt."
The defendants cite as contrary authority American SuretyCompany of New York v. Conway, 222 Fed. Rep. 140, wherein the court held that the administrator of a deceased grantor in a conveyance alleged to be fraudulent was a necessary party defendant. In that case the prayer was that one of the defendants be decreed to hold the land in trust for the benefit *Page 232 
of the judgment creditor, subject to the lien of its judgment, and that the heirs of the deceased grantor pay the judgment and account for the rents and profits, and the administrator of the deceased was, of course, a necessary party, particularly in view of the fact that the bill alleged that decedent, during his lifetime, and his heirs thereafter, received to his and their use the rents, c., as fully, to all intents and purposes, as if the pretended conveyance had not been made, and prayed an accounting. In the instant case, as heretofore noted, no affirmative relief is prayed for against Fox.
Defendants further rely on In re Vadner, 259 Fed. Rep. 614, and Casey v. Baker, 212 Fed. Rep. 247, the former being a Nevada case and the latter from the northern district of New York, in each of which cases a trustee intervened after the institution of the suit against the grantor who, after the institution thereof, was adjudicated a bankrupt.
There being a separate and distinct controversy between complainant and defendant All Continent Corporation the entire cause must be removed, in pursuance of the prayer of the petition of that cause. Barney v. Latham, 103 U.S. 205; Gainesville v.Brown-Crummer Investment Co., 277 U.S. 54; Des Moines Elevatorand Grain Co. v. Underwriters Grain Association (C.C.A. 8),63 Fed. Rep. 2d 103; Hoffman v. Lynch (D.C.N.D.,Ga.), 23 Fed. Rep. 2d 518. *Page 233