LANGLIE, Governor, et al. v. UNITED FIREMAN'S INS. CO. et al.

No. 424.

District Court, W. D. Washington, N. D.
June 25, 1941.

On Rehearing July 8, 1941.

Smith Troy, Atty. Gen., Oliver Malm, Asst. Atty. Gen., Geo. H. Boldt, of Seattle, Wash., and Leo A. McGavick, of Tacoma, Wash., for plaintiff.

Bogle, Bogle & Gates, Edward G. Dobrin, Fred G. Clarke, and Shank, Belt, Rode & Cook, all of Seattle, Wash., for defendants.

NETERER, District Judge.

This is an action based on the "Uniform Declaratory Judgments Act" of Washington, Vol. 2 Rem.Rev.Stat. (Chap. 9, Secs. 784—1 to 784—16).

The complaint states that Arthur B. Langlie, Governor, and Cliff Yelle, Auditor, Don G. Abel, Director of Public Service, James A. Davis, Acting Director of Highways, Olof L. Olsen, Director of Finance, and Budget of Business, of the State of Washington, constitute the Washington Toll Bridge Authority; that said Washington Toll Bridge Authority be cited as "Authority".

That the Washington Toll Bridge "Authority" procured said insurance corporations, "in consideration of premiums to them respectively paid to make insurance upon said bridge * * * against loss or damage caused by * * * cyclone, windstorm. * * *. The aggregate amount of the policies * * * being $5,200,000.00, it being understood and agreed that the liabilities on each of said policies should be pro rata portions of said sum of $5,200,000.00 to the face of said policies respectively." The insurance among other things is against "collapse of the bridge or any part thereto." The face amount of each of the twenty-two policies is set forth. The corporate entity of each insurance company is pleaded; all except two are non-residents of the State of Washington.

It is then alleged that on November 8, 1940, said bridge collapsed, and by "reason of said collapse, said bridge and approaches are wholly destroyed and ceased to exist as a bridge."

Proof of loss is pleaded and the complaint continues. "That defendant Insurance Corporations did not * * * make any communication to plaintiff, except * * * on or about the 5th day of

March, 1941, certain attorneys for defendant Insurance Corporation in an informal conversation with one of the members of said 'Authority' expressed the belief that the damage and loss arising from the collapse and destruction of said bridge did not exceed the sum of $1,800,000.00 with which said individual member of said Authority disagreed, whereupon said Insurance Corporations, through their attorneys, presented a paper writing * * *" which reads:

"Seattle, March 5, 1941
"Washington Toll Bridge Authority,
"Olympia, Washington,
"Sirs:

"This is to acknowledge receipt of document dated March 1, 1941, entitled 'Proof of Loss' presenting a claim in the total amount of $5,200,000 for loss and damage to the Tacoma Narrows Toll Bridge, alleged to have occurred November 7 and 8, 1940, under the several policies of insurance in the aggregate total amount $5,200,000 therein designated and issued by the undersigned companies.

"We confirm having advised you that the undersigned companies do not agree that said bridge was or is a total loss, or was or is totally destroyed, or did cause or has ceased to exist as a bridge, and that the undersigned companies do not agree that the loss and damage to said bridge was or is the amount claimed in said 'Proof of Loss'; the undersigned companies asserting that the loss and damage to said bridge does not exceed the sum of $1,800,000 with which you have disagreed.

"You are, therefore, notified that the undersigned companies jointly and severally demand an appraisal, as provided in paragraph 6 of said policies of Insurance, and do hereby jointly and severally select and appoint I. F. Stern, Consulting Engineer, 38 South Dearborn Street, Chicago, Illinois, temporary local address C/o Bogle, Bogle & Gates, Central Building, Seattle, Washington, as a competent and disinterested appraiser and demand that you likewise select a competent and disinterested appraiser to the end that said appraisers and said appraisal shall proceed promptly and as provided by said paragraph 6 of said policies.

"Very truly yours,"
Signed by all the underwriters by their attorneys.

Sec. 6 referred to in said policies reads: "In case the assured and this company shall fail to agree as to the amount of loss or damage, each shall, on the written demand of the other, select a competent and distinterested appraiser. The appraisers shall first select a competent and disinterested umpire and failing for fifteen days to agree upon such umpire, on request of the Assured or this Company such umpire shall be selected by a Judge of a court of record in the State of Washington. The appraisers shall then appraise the loss and damage, stating separately actual loss on each item, and failing to agree, shall submit their differences only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of sound value and loss or damage. Each appraiser shall be paid by the party selecting him and the expense of appraisal and umpire shall be paid by the parties equally."

It is alleged that the bridge being a total loss, "under the laws of the State of Washington * * * Sec. 7151, Rem.U. S. * * * the amount of insurance written shall be taken conclusively to be the true amount of loss and measure of damage * * * thereunder." Then allege that defendant insurance companies do not agree said bridge was wholly destroyed, and allege that said section 6 has no application. That an actual and present justiciable controversy exists between plaintiff and defendant. That defendants are not entitled to demand of plaintiff the appointment of an appraiser as provided in said Sec. 6, and in abundance of caution plaintiff prays declaratory judgment of the court, whether on total loss appraiser shall be appointed, if so whether a proper demand was made, and if appraisal is required, and demand is sufficient, to "fix and determine the scope and effect of such appraisal."

The cause on petition of nineteen defendants was removed to this court on the ground of diversity of citizenship and separate controversy, and is now before the court on motion to remand.

This court has jurisdiction only if the controversy is between citizens of different States, or there is a separable controversy. 28 U.S.C.A. § 41. There is no diversity of citizenship unless all the defendants are citizens of different States, from all the plaintiffs. Raphael v. Trask,

194 U.S. 272, 276, 277, 24 S.Ct. 647, 48 L. Ed. 973. A State is not a citizen, and in a suit by or against a State there is no diversity citizenship. Minnesota v. Northern Securities Co., 194 U.S. 48, 63, 24 S. Ct. 598, 48 L.Ed. 870. The Supreme Court in The State of Washington ex rel. Pac. Bridge Co. v. Washington Toll Bridge Authority, Wash., 112 P.2d 135, 136, said:

"The Washington Toll Bridge Authority was established and its powers and duties prescribed by the Laws of 1937, chapter 173, p. 654, Rem.Rev.Stat. Vol. 7A, § 6524 —1 [P.C. Sec. 2697—501] et seq. It is composed of the governor, the state auditor, the director of public service, the director of highways, and the director of finance, business and budget, all of whom act ex officio and receive no additional compensation by virtue of Authority membership or service. A majority of the members, if authorized, act for the Authority (§ 6524—2 [P.C. Sec. 2697—502]).

"The Authority is empowered to construct toll bridges 'upon any highways of this state' (§ 6524—3 [P.C. Sec. 2697—503]), and to pay for the same from any available funds (§ 6524—4 [P.C. Sec. 2697 —505]) procured from the sale of revenue bonds (§§ 6524—7, 6524—8 [P.C. Secs. 2697—508, 2697—509]), and to fix and collect toll charges to retire the bonds and meet the expenses of operation and maintenance of the improvements (§ 6524 —9 [P.C. Sec. 2697—510]). The statute further provides (§ 6524—14 [P.C. Sec. 2697—515]) that:

" 'Monies required to meet the costs of construction and all expenses and costs incidental to the contruction of any particular toll bridge or toll bridges or to meet the costs of operating, maintaining and repairing the same, *shall be paid from the proper fund therefor by the state auditor upon voucher submitted by the director of highways approved by the Washington Toll Bridge Authority.'* (Italics ours.)"

In State of Washington ex rel. Pac. Bridge Co. v. Washington Toll Bridge Authority, supra, the court held the toll bridge a "State agency" and "separate entity." The case is on for reargument before the full court.

The General Insurance Company of America and the Northwestern Fire Association are citizens of Washington, if they are necessary parties, and the issue is inseparable, it is immaterial whether the plaintiff is the State of Washington, and the "Toll Bridge Authority" the alter ego, or arm of the State.

The reasonable conclusion is warranted from the record in this case that the twenty-two defendant insurance companies agreed together to underwrite the $5,200,-000 not in joint policies, but in the several policies evidencing the insurance in issue, each writing the amount noted in the respective policies, but otherwise that the policies should be identical in form and substance; and each policy contained section 6 in issue. The issue as to the interpretation of Sec. 6 is inseparable, and each defendant is interested, which interest would be affected. The Declaratory Judgment Act, Sec. 784—11 Rem.Rev.Stat., provides " * * * all persons shall be made parties who have or claim any interest which would be affected * * *". "This act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." R.R.S. 784—12. The issue is a written contract, effected by statute, which entered into and became a part of the contract, in which a question of construction and application has arisen which concerns all defendants in like fashion (Sec. 784—2, supra), and the court is given power (Sec. 784—1, R.R.Stat. Vol. 2) "to declare rights, status and other legal relations * * *".

 All defendants it appears obvious are indispensable parties; by "indispensable party * * * is meant one who has such an interest in the subject-matter of the controversy that a final decree cannot be rendered between the other parties to the suit without radically * * * affecting his interest * * *." Steelman v. All Continent Corp., 1937, 121 N.J.Eq. 218, 188 A. 817, 823.

Bochard on Declaratory Judgments at 104 says:

"Aside from the necessity for proper parties plaintiff and defendant having conflicting legal interests in the controversy to be adjudicated, the procedure for a declaratory judgment vests in the courts a wide discretion to insist upon joining and impleading all parties they deem interested or likely to be affected by the decision, and to dismiss, usually without prejudice, a declaratory proceeding instituted without the presence of, or service upon, all such interested persons. (Citing section 11 of the Uniform Act, which is likewise

contained in Rem.Rev.Stat.Supp. Sec. 784—11 and quoted in plaintiff's brief.) (Br. 28).

"The justification for such discretion is the fact that declaratory judgment is designed to terminate the controversy or uncertainty sub judice; and if interested parties are not served or present, it would be likely to fail of that essential purpose. The court occasionally does give judgment, notwithstanding the absence of some designated party defendant, but explains that his interests are not affected by the decision or that his presence would have added nothing of importance which the court needed to take into consideration. More often, however, the court dismisses the proceeding, on the ground that some designated necessary party or parties should have been heard, not only for the information of the court but because such a party might be affected by, even though not bound by, the decision; and in so conclusive a proceeding it would be neither just or proper to render a judgment without hearing and binding such interested person. Any suggestion, of course, that interested parties would be bound by a judgment in a proceeding to which they were not parties served, with opportunity to be heard, would encounter constitutional objections; but although this is conceded, courts properly decline to make declaration between parties when others, not bound, might later raise the identical issue and deprive the declaration of that conclusive and tranquillizing effect it is calculated to subserve."

Upon this text and holding of the cases cited by the text and common sense, all defendants are indispensable parties to this action, based on the Uniform Declaratory Judgment Act, supra.

The direct issue is, that all parties are similarly interested in the construction and application of the provisions of Sec. 6 of the insurance policies, and that the issue cannot be determined without the presence of all defendants appears conceded by the defendants, by the joint and several notice of appointment of a joint appraiser, that the interest in loss is mutual, and joint and inseparable. The Uniform Declaratory Judgment Act was in effect when the insurance was underwritten, and entered into and became a part of the contracts. No money judgment is asked against the defendants or either of them. Lists of cases are cited by the respective parties, on inseparable controversy which have been examined, and analysis would serve no useful purpose, and would unduly extend this memo.

As to whether the plaintiff is a corporate entity is not passed on, it is not necessary, nor would this court be bound by the State court's conclusion, but would give such holding great weight; the issue being inseparable this court has not jurisdiction and the cause will be remanded.

### On Rehearing.

The motion for rehearing is denied. I am convinced from the record on the construction and application of Sec. "6" of these insurance contracts on the "Declaratory Judgement Act" all defendants are interested in like fashion, the issue is inseparable. The Supreme Court of the State having held that the "authority" is a distinct entity, I did not consider the citizenship of the plaintiff, but did say that this court is not bound by the State Court conclusion, but great weight should be given to such holding; I did however have in mind the fact that the United States court must determine its own jurisdiction, for itself, and that if perchance I should be in error on the question of inseparable controversy, I did hold in United States et al. v. Clallam County, Washington, D. C., 1922, 283 F. 645, that the United States Spruce Production Corporation organized under the laws of the State of Washington, under powers conferred by The Congress, not engaged in commercial business, that its railroad and other properties, not subject to taxation by the State, since it is an agency or arm of the United States and that the corporation as an entity did not function in the sense of freedom of action or power of control. This case was affirmed by the Supreme Court of the United States, 263 U.S. 341, at page 345, 44 S.Ct. 121, at page 122, 68 L.Ed. 328, Justice Holmes for the court said " * * * not only the agent was created but all the agent's property was acquired and used, for the sole purpose of producing a weapon for the war. This is not like the case of a corporation having its own purposes as well as those of the United States and interested in profit on its own account." The Supreme Court following the Clallam County case could well say that the "authority" is an arm of the State, functioning in the State's behalf, not having its own purpose, and interest in profit on its own account, and thus there is not diversity of citizenship, and dismissed the case.